**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Charles V. GENTILE, Defendant-Appellee.**

No. 86–2768.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1987.

Decided April 6, 1987.

Rehearing and Rehearing En Banc Denied May 21, 1987.

Patrick E. Deady, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellant.

Patrick A. Tuite, Patrick A. Tuite, Ltd., Chicago, Ill., for defendant-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

In August 1985 the United States charged defendant Charles Gentile with travelling in interstate commerce to facilitate an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3) (1982), and with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1982). Following a jury trial in March 1986, Gentile was acquitted by the jury of the travelling in interstate commerce charge; on the possession charge, however, the jury was unable to reach a unanimous verdict. Consequently, the district judge declared a mistrial on the possession charge. Four months later, in July 1986, the United States again charged Gentile with possession with intent to distribute cocaine and additionally charged him with making false statements to agents of the federal Drug Enforcement Administration, in violation of 18 U.S.C. § 1001 (1982). Gentile responded to this second indictment by moving the district court to exclude the testimony of five witnesses, adduced at his first trial, on collateral estoppel grounds. The district judge granted Gentile's motion to exclude the testimony. The government appeals the district court's order granting Gentile's motion to exclude.

## I. FACTUAL BACKGROUND

Charles Gentile was a police sergeant in Chicago. He testified he was socially ac-

quainted with a Donato Disabato who owned a pizza parlor. Gentile testified he met an Andrew Affrunti at Disabato's pizza parlor while Affrunti was remodeling the restaurant. The three men met socially throughout the year in 1984. Gentile testified that on December 3, 1984, Affrunti called him on the telephone to request a favor. Affrunti asked Gentile to drive him to Chicago's O'Hare Airport and then keep possession of Affrunti's automobile while Affrunti was away on a trip to Florida. Gentile testified Affrunti picked him up and drove to the airport; Gentile dropped Affrunti off at the airport and returned home with Affrunti's automobile. Gentile testified Affrunti took three pieces of luggage to the airport with him, two of which were tan carry-on bags. Two days later on December 5th, Gentile asserted, Disabato's wife called him and told him Affrunti was returning to the airport late that evening and wanted Gentile to pick him up. After meeting Affrunti at the airport, Gentile testified, Affrunti told him a piece of his luggage was missing. Gentile alleged he decided to help Affrunti locate the missing bag because Affrunti spoke only broken English. At trial the government attempted to contradict Gentile's account of why he was at the airport; the government endeavored to show Gentile was there to pick up his own bag full of cocaine, not to help an Andrew Affrunti retrieve missing luggage.

But for whatever reason, late in the evening of December 5th, Gentile was at Chicago's O'Hare Airport. He approached Eastern Airline's baggage claim office looking for a particular piece of luggage. Two baggage claim agents on duty at the time, Barbara Schuman and Laura Stinauer, testified Gentile identified himself as Andrew Affrunti, mentioned he had just arrived on Eastern Flight 430 from Miami, and informed the agents that his luggage from Miami had not yet arrived. Gentile alleged, on the other hand, he merely told the agents: "A bag didn't come in. What do you do now?"

Claim Agent Schuman produced a delayed baggage report form and asked Gentile for information. Gentile gave the name of Andrew Affrunti and an address of 3901 West Fullerton in Chicago. Claim Agent Schuman testified Gentile told her he checked two bags thirty minutes before departure in Miami, but received only one in Chicago. She also testified Gentile produced a baggage claim ticket stub for his missing bag and described the bag as a fawn carry-on bag, but Gentile was unable to produce a plane ticket because he claimed to have left it on the airplane. Claim Agent Schuman also testified Gentile refused to accept delivery of the missing bag at his home, declined to provide a telephone number at which he could be reached, and eventually signed the delayed baggage report as "Andrew Affrunti." Gentile testified, in contrast, that he left the baggage claim office twice during this time, once to get Affrunti's baggage claim ticket stub and other necessary information and once to have Affrunti sign the delayed baggage report. Gentile asserted the baggage claim agents did not see Affrunti because Affrunti remained out of the claim agents' view near the baggage conveyor belt.

In any event, Gentile concluded his inquiries and left the airport. Claim Agent Schuman testified that throughout this time Gentile was anxious and "extremely upset" about the bag and asked several times: "When can I come in? When can I get my bag?"

The next day, December 6th, another Eastern Airlines claim agent, Barbara Fletcher, was on duty at the baggage claim office. According to her testimony, she received a telephone call from a man identifying himself as Andrew Affrunti. The caller asked about a missing bag and explained he had filled out a form the night before. Claim Agent Fletcher testified the same man called again two or three times during the morning inquiring about the missing bag. During one of these calls, Claim Agent Fletcher testified, the man declared that "if we didn't locate the bag he might as well get on the next plane out of town."

According to Gentile, however, he never called the airport during the morning of

December 6th. He alleged, however, he did receive a call from Affrunti who asked Gentile to accompany him to the airport to retrieve Affrunti's missing bag.

For whatever reason, Gentile returned to the airport around noon on December 6th. He went to the baggage claim office and spoke with Claim Agent Fletcher.

Claim Agent Fletcher testified Gentile explained to her: "I don't know if you were the one I spoke to earlier this morning, but I'm here to see if you have any further information in regard to locating the lost bag." She also testified he produced the blue passenger copy of the delayed baggage report. Claim Agent Fletcher testified she told Gentile she had no additional information about the missing bag, but that it might be on a flight from Miami due to arrive shortly. Gentile left the baggage claim office, she testified, and paced back and forth in front of a row of chairs across from the office, smoking one cigarette after another. Because of the suspect nature of the telephone calls and Gentile's unusual behavior with respect to retrieving the missing bag, Claim Agent Fletcher telephoned Special Agent Bob Fulkerson of the federal Drug Enforcement Administration. Special Agent Fulkerson and Special Agent William Furay, another DEA agent, arrived at the baggage claim area about the time the luggage from the Miami flight was arriving. Claim Agent Fletcher located the missing bag and brought it into the office. She spoke with Special Agent Fulkerson and then went out of the office and told Gentile his missing bag had arrived on the flight from Miami. As Gentile walked with her toward the office, Claim Agent Fletcher testified, he pointed at the DEA agents and asked "if they were cops." Gentile then left the area without claiming the bag.

Gentile acknowledged he did speak to Claim Agent Fletcher about the missing bag and waited for the bag to arrive. But he also alleged, on the other hand, that he did not produce a blue passenger copy of the delayed baggage report and did not tell Claim Agent Fletcher he had called earlier that morning. After Claim Agent Fletcher told him that his missing bag had arrived,

Gentile testified, he began to walk with her to the office but then left her to find Affrunti, whom he believed had to sign a form to get possession of the bag.

The two DEA agents followed Gentile out of the airport terminal. He walked out of the terminal building and then reentered it near a taxicab stand at the other end. They momentarily lost track of him, but the DEA agents later spotted Gentile on an escalator leading to a tunnel that connected the terminal with a parking garage and hotel. Near the end of the tunnel, Special Agent Fulkerson detained Gentile to ask him some questions.

In response to questioning, Gentile told the DEA agents his name was Jose Cruz. Gentile said he knew nothing about a carry-on bag, but had been at the baggage claim area to pick up a box from Florida.

Gentile alleged he gave these false answers because he recognized Special Agent Fulkerson from Narcotics Court in Chicago and became scared he was being used by Affrunti in a narcotics deal. Gentile also testified he was scared because several years earlier he had been investigated and indicted for beating a narcotics suspect, a charge for which he was ultimately acquitted.

Special Agent Fulkerson testified Gentile returned with him to the baggage claim area to locate his box and to look at the carry-on luggage. The DEA agents testified they showed Gentile a brown carry-on bag with the name "A. Affrunti" on the tag and asked Gentile if it was his. Gentile said it was not; he explained he was looking for a box with the name "Arrunti."

The DEA agents took Gentile to another part of the airport to photograph him. On the way, Gentile told them his name was Jose Cruz, he lived at 832 West Buena, Apartment 505, he was born on July 25, 1945, and he worked for CSX Liftgate—all false items of information. Gentile asserted he gave this false information to the DEA agents because he "wanted to get out of there and go find this guy."

After taking Gentile's photograph, Special Agent Furay continued to speak with Gentile. Special Agent Furay then left the

airport to check on the addresses provided by Gentile, while Special Agent Fulkerson arranged for a drug-detector dog to examine the missing bag. Special Agent Furay found no one using the name Affrunti or Cruz at either address provided by Gentile. Meanwhile, the drug-detector dog had alerted on the missing bag. After determining that no one else had come to claim the bag, Special Agent Fulkerson opened the bag and found four kilograms of cocaine, three pairs of blue jeans, one pair of white sneakers, a handkerchief, and a toilet kit. Inside one of the pockets of one pair of blue jeans, Special Agent Fulkerson found a piece of paper with a Miami telephone number on it.

Gentile eventually left the airport and returned to his home. He testified he made several telephone calls to Disabato's pizza parlor and Disabato's home in an attempt to locate Affrunti. Gentile testified he told Disabato that Affrunti had dope in the bag and that Affrunti had tried to get Gentile to pick it up. Gentile alleged he made numerous attempts to find Affrunti, but never saw him again.

Subsequent investigation by DEA agents of telephone toll records from Miami showed that from the Miami phone number found in the blue jeans's pocket, numerous calls were placed to a Chicago apartment rented by Disabato. From that Chicago apartment rented by Disabato, seventy-seven calls were placed to Gentile's residence between October 29, 1984, and January 31, 1985. Some of them were placed on December 5th, the first day Gentile was at the airport to retrieve the missing bag. Six of these calls were placed on December 6th, the day Gentile was detained by the DEA agents at the airport, six were placed the following day on December 7th, and twenty-six were placed between December 8th and January 31st. Additional investigation of Eastern Airline records showed that "A. Affrunti" and "D. Disavato [sic]" flew from Miami to Chicago on December 5th, having purchased consecutively numbered tickets less than thirty minutes before departure.

On February 7th Special Agent Fulkerson identified "Jose Cruz" as Charles Gentile, a Chicago police sergeant. The government indicted Gentile six months later in August 1985.

## II. LEGAL STANDARD

The government appeals an order of the district court excluding certain testimony adduced at Gentile's first trial. Ordinarily we will reverse a district judge's decision to exclude evidence only if the judge has abused his discretion in so doing. *Webb v. City of Chester*, 813 F.2d 824, at 827 (7th Cir.1987); *United States v. Buishas*, 791 F.2d 1310, 1313 (7th Cir.1986). But if, as is the case here, the district judge's decision to exclude the evidence is based solely on the resolution of a legal issue, not subject to the district judge's discretion, then our standard of review is not abuse of discretion, but rather is *de novo*. See *Petrucelli v. Coombe*, 735 F.2d 684, 690 (2d Cir.1984) ("When a trial judge admits evidence because he finds it more probative than prejudicial, an appellate court will not find that the evidence should have been excluded absent a clear showing that the trial judge abused his discretion. But when the argument is raised to the federal constitutional level, the trial court will have no discretion at all as to whether to exclude the evidence; if its admission would violate the Double Jeopardy Clause, the court must exclude it.") citations omitted).

## III. DISCUSSION

The district judge, by order dated August 18, 1986, excluded certain testimony, on collateral estoppel grounds, from Gentile's second trial. His order excludes all the testimony of Claim Agents Schuman and Stinauer, the claim agents on duty the evening of December 5th, and all those portions of testimony, contradicted by Gentile's own testimony, of Claim Agent Fletcher and of Special Agents Fulkerson and Furay, all three of whom spoke with Gentile at the airport on December 6th. The district judge excluded the evidence because he believed its inclusion would run

afoul of the principle of collateral estoppel and thereby subject Gentile to double jeopardy in violation of the fifth amendment. We disagree.

The district judge excluded "any evidence tending to show, contrary to the jury's verdict, that defendant Gentile was the 'Andrew Affrunti,' a passenger on the flight." He did so on the basis that the first jury "necessarily found defendant Gentile was not the Andrew Affrunti who checked the bag containing the cocaine and flew on Eastern Flight 430 on December 5, 1984" when it acquitted Gentile on the travelling in interstate commerce charge.

We agree with the district judge that the jury necessarily found certain facts in acquitting Gentile of the travelling in interstate commerce charge, *viz.*, (1) that Gentile was not one and the same person as Andrew Affrunti, (2) that Gentile did not check the carry-on bag containing the cocaine in Miami, and (3) that Gentile was not on a December 5th flight from Miami to Chicago. We disagree, however, that "any evidence tending to show" the nonexistence of those three facts is excluded on collateral estoppel grounds from Gentile's second trial.

The doctrine of collateral estoppel is embraced by the double jeopardy clause of the fifth amendment. *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). "[Collateral estoppel] means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194.

 We recently defined in this circuit the meaning of the phrase "issue of ultimate fact." We explained that "the critical question is whether it can be said with assurance that the fact was necessarily established by the judgment at the earlier trial." *United States v. Kimberlin*, 805 F.2d 210, 232 (7th Cir.1986); *see also Yates v. United States*, 354 U.S. 298, 336, 77 S.Ct. 1064, 1086, 1 L.Ed.2d 1356 (1957) (pointing out that the doctrine of collateral estoppel "makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision"). Thus, we are here faced with the question of what facts were necessarily established at the earlier trial by Gentile's acquittal on the travelling in interstate commerce charge. In resolving this question we note that Gentile "carries the burden of establishing that the issue he seeks to foreclose from consideration in the second case was 'necessarily' resolved in his favor in the prior proceeding." *United States v. Castro*, 629 F.2d 456, 465 (7th Cir.1980).

The government on the one hand argues that the only fact necessarily established by Gentile's acquittal "was that the jury found the evidence insufficient to prove [beyond a reasonable doubt] that defendant had travelled from Miami to Chicago to facilitate a narcotics transaction."

Gentile, on the other hand, argues that any evidence at all tending to show Gentile travelled in interstate commerce was discounted and resolved against the government by the jury when it reached a verdict of acquittal. Gentile also contends the government's argument merely concedes the verdict, but does not recognize that certain ultimate issues of fact were actually resolved by the jury.

We are unwilling to adopt so severe a view from either perspective of what facts were necessarily established by the jury's verdict of acquittal.

 The testimony of the three claims agents and the two DEA agents was submitted for a dual purpose—both to prove Gentile illegally travelled in interstate commerce and to prove he possessed cocaine with an intent to distribute it. The jury acquitted Gentile on the travelling in interstate commerce charge. But that does not mean the jury completely discredited all the testimony of those five witnesses about what Gentile said to them. Neither does it mean that the jury believed every scintilla of testimony of each witness, but merely failed to draw the inferences therefrom desired by the government. What we can say with assurance, however, is that the

jury's acquittal of Gentile on the travelling in interstate commerce charge does mean that three particular facts were necessarily established by the jury: (1) Gentile was not one and the same person as Andrew Affrunti; (2) Gentile did not check the carry-on bag containing the cocaine in Miami; and (3) Gentile was not on a December 5th flight from Miami to Chicago. Beyond those three facts, however, we are uncertain of what the jury found. It may very well be that the jury believed Gentile said some of the things he purportedly said to the three claims agents and the two DEA agents, but it did not believe Gentile was on the flight from Miami to Chicago. In other words, the jury did not necessarily find that the testimony of all five witnesses was false. It could have believed much or all of that testimony and still concluded Gentile did not travel in interstate commerce. We say this because the government presented no direct evidence of Gentile being in Miami or on the plane from Miami to Chicago. The testimony of the five witnesses was circumstantial, not direct. Moreover, the toll record of telephone calls placed from Disabato's apartment to Gentile's residence on December 5th, the day Gentile allegedly was in Miami, tends to show circumstantially that Gentile was not in Miami at all. Because of the lack of direct evidence and the existence of some circumstantial evidence to the contrary, the jury may have been unwilling to draw inferences in the government's favor on the basis of the circumstantial testimony of the five witnesses.

The district judge, on the other hand, who carefully reviewed the testimony, believed that the jury necessarily discredited the testimony of the five witnesses:

> From a realistic standpoint, the defendant's alleged statements to the Eastern Airlines personnel at O'Hare was the primary basis upon which the government sought to prove defendant guilty. Defendant testified and denied making the precise statements attributed to him by those government witnesses. Defendant, while testifying, explained his conduct and offered through his own testimony what was said. The jury necessar-

ily believed defendant's testimony on those essential factual points. The doctrine of collateral estoppel now precludes the defendant from having to convince a second jury of those facts which the first jury necessarily found.

With due respect for the district judge's presence at the trial and his perception of the main thrust of the parties' cases, we cannot say the jury necessarily established that the five witnesses' testimony was incredible or false. The jury found Gentile did not travel in interstate commerce; it did not necessarily find Gentile did not falsely claim to have flown from Miami to Chicago on the night of December 5th and attempt to claim the missing bag as his own. The five witnesses' testimony cannot be excluded merely because it "tends to show" that Gentile travelled in interstate commerce, a charge for which Gentile was acquitted.

We are comfortable with our holding because it rests on recent precedent. We were confronted with a similar question about the admissibility of evidence at retrial in *United States v. Kimberlin*, 805 F.2d 210 (7th Cir.1986). In *Kimberlin* the defendant was charged with violating federal law in connection with eight explosions set off during the first week of September 1978 in Speedway, Indiana. The government presented evidence at trial tending to show that defendant purchased an automobile in Ohio, that he was seen driving the automobile in Ohio and again in Indiana, and that ammunition purchased in Ohio was discovered in the trunk of the automobile when it was searched in Indiana. But even with that presentation of evidence, the jury acquitted defendant of one count of knowingly transporting ammunition from Ohio to Indiana. On retrial the government charged defendant with possession of bomb components, relying on evidence of ammunition and other items in the trunk of defendant's automobile and on evidence that defendant had driven the automobile in both Ohio and Indiana. Defendant argued at retrial that the evidence tending to show he purchased and possessed the automobile in Ohio and later drove it to Indiana should be excluded on

collateral estoppel grounds. He contended that his acquittal of knowingly transporting ammunition in interstate commerce resolved the ultimate issues of fact of whether he purchased or possessed the automobile in Ohio and subsequently drove it to Indiana.

We held, however, that possession and use of the automobile in Ohio and Indiana were not ultimate facts determined by the jury at the first trial. We explained: "The jury may simply have been unwilling to draw the inference that it was the defendant who purchased the ammunition in Ohio or obtained it from the buyer, or at least knew the ammunition was in the car during the interstate trip." *Kimberlin,* 805 F.2d at 232.

Similarly, the jury here may have been unwilling to draw the inference that Gentile actually travelled on an airplane from Miami to Chicago on December 5th, even if it believed that Gentile made statements to the claims agents that he was "Andrew Affrunti" and that he had just flown in from Miami. Moreover, as we similarly held in *Kimberlin,* we see no reason why the testimony adverse to Gentile cannot be introduced to show his possession of cocaine even though Gentile was acquitted of transporting the cocaine in interstate commerce. Acquittal on one charge arising out of a set of facts does not preclude the use of the same evidence to prove a second charge on retrial. *See United States v. Woods,* 484 F.2d 127, 137–38 (4th Cir.1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974); *United States v. Friedman,* 506 F.2d 511, 517 (8th Cir.1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); *see also United States v. Magnus,* 743 F.2d 517, 524–26 (7th Cir. 1984).

██ As a result, we conclude the inclusion of the testimony of these five witnesses at retrial will not offend the doctrine of collateral estoppel. Having said that, however, we are mindful that the first jury did necessarily establish some facts that the government cannot now relitigate. As the government recognizes: "The government obviously cannot argue that defendant took

the flight to Chicago on December 5, 1984, and, to the extent there is a risk that the jury might improperly use the evidence to infer this fact, that problem can be resolved by an appropriate cautionary instruction." The government at oral argument agreed that the first jury, by acquitting Gentile of travelling in interstate commerce, necessarily established three facts: (1) Gentile was not one and the same person as Andrew Affrunti; (2) Gentile did not check the carry-on bag containing the cocaine in Miami; and (3) Gentile was not on a December 5th flight from Miami to Chicago. Evidence which may be relevant only to prove those settled facts may not be admitted.

As a protective measure, the district judge on retrial should admit the testimony of the five witnesses relevant to the possession charge, but only after the government has stipulated to the three facts necessarily established by the first jury and after the district judge has cautioned the jury as to the jury's limited use of the five witnesses' testimony if such an instruction is desired by the defendant.

## IV. CONCLUSION

Because the admission of the testimony of the five witnesses will not offend the principle of collateral estoppel, Gentile's right to be free from double jeopardy will not be violated. Accordingly, the testimony will be admitted on retrial in conformance with this opinion. Because the district judge improperly excluded the testimony, the order of the district court is REVERSED and this cause is REMANDED for further proceedings consistent with this opinion. Circuit Rule 18 shall not apply.

IT IS SO ORDERED.