George D. BUCK, Petitioner–Appellant,

v.

Herb MASCHNER, and Attorney General of the State of Kansas, Respondents–Appellees,

National Association of Criminal Defense Lawyers, Amicus Curiae.

No. 88–1423.

United States Court of Appeals, Tenth Circuit.

July 3, 1989.

David R. Gilman (James F. Vano, on the brief), Overland Park, Kan., for petitioner-appellant.

John K. Bork, Asst. Atty. Gen. (Robert T. Stephan, Atty. Gen., and Brenda L. Braden, Deputy Atty. Gen., on the brief), Topeka, Kan., for respondents-appellees.

Steven G. Farber, Santa Fe, N.M., on the brief, for amicus curiae.

Before HOLLOWAY, Chief Judge, and SETH and TACHA, Circuit Judges.

SETH, Circuit Judge.

George D. Buck ("petitioner") appeals the district court's order denying his petition for a writ of habeas corpus. Petitioner contends that the introduction of evidence used in a prior alleged molestation of children charge for which he had been tried and acquitted, violated his constitutional rights.

In the prior charge, in August 1982, petitioner was accused of taking indecent liberties with three children, Deborah, Damien, and Danyelle, in violation of Kan.Stat.Ann. § 21–3503. At his trial in April 1983, the three children testified to events that allegedly occurred when petitioner visited their house to tune a piano. Specifically, they testified that petitioner touched two of them in their genital areas and kissed the third on her breast. Petitioner was acquitted.

In January 1984, petitioner was charged with taking indecent liberties with another child, Casey. At this trial, the three children from the 1983 trial again testified for the State concerning the 1982 incident involving petitioner. The trial court gave a limiting instruction to the jury before the three children testified, stating that the testimony of the children should be considered solely for the purpose of proving petitioner's motive or intent, or the absence of mistake or accident. The children's testimony was essentially identical to their testimony at the earlier trial. The State also called Detective Melvin Richey, who had investigated the 1982 incident, but who was not involved in the investigation of the case being tried. All told, four of the seven witnesses whom the State called in this trial testified to events that formed the basis of the earlier trial. After exhausting his State court remedies, petitioner filed for habeas corpus relief in the United States District Court for the District of Kansas, pursuant to 28 U.S.C. § 2254.

In *Ashe v. Swenson*, 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, the Supreme Court established that the Fifth Amendment guarantee against double jeopardy, applicable to the states through the Fourteenth Amendment, embodies collateral estoppel as a constitutional requirement. *Ashe* involved an early morning robbery of a poker game taking place in a private residence. Four suspects were tried for the robbery of one of the poker players, and all but one of them were convicted. The fourth suspect, Ashe, was tried a second time for the robbery of a second poker player. In the second trial, the Government refined its case, the witnesses were more convincing, and Ashe was convicted.

The Court in *Ashe* adopted a collateral estoppel doctrine for criminal cases based on "realism and rationality," rather than on the hypertechnical considerations historically associated with the doctrine. Under *Ashe*, a court considering whether to admit evidence of conduct that formed the basis of a previous trial and judgment of acquittal must

"examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

In the case before it, the Court determined that the single issue in the first trial had

been whether Ashe was one of the robbers, and that the jury's verdict of acquittal had laid to rest that issue. Therefore, the Court held that the second prosecution was "wholly impermissible" in the light of the Fifth Amendment guarantee against double jeopardy.

The Supreme Court in *Ashe* did not directly address whether the constitutional collateral estoppel doctrine is limited to reprosecutions based on the same conduct, or if it applies as well to the use in an unrelated trial of evidence of a prior charge upon which the defendant has been acquitted. Our opinion in *Abramson v. Griffin,* 693 F.2d 1009, 1011 (10th Cir.), stated broadly that the doctrine bars the relitigation of an ultimate fact already disposed of by a valid and final judgment in a criminal case. But *Abramson,* like *Ashe,* concerned a reprosecution based on essentially the same acts as those upon which the defendant had previously been acquitted. In other cases, we have allowed the introduction of such evidence when it arises from events related to, but distinct from, conduct constituting the offense for which the defendant is charged. *See United States v. Sutton,* 732 F.2d 1483, 1489 (10th Cir.) (allowing evidence where defendant was acquitted on several counts of a multicount indictment and was being retried on other counts); *United States v. Van Cleave,* 599 F.2d 954, 957 (10th Cir.) (allowing evidence concerning previous conduct, for which the defendant had been tried and acquitted, where it was "an inseparable part of the transaction" for which the defendant was being tried); *see also United States v. Gentile,* 816 F.2d 1157 (7th Cir.); *United States v. Gutierrez,* 696 F.2d 753, 755 n. 2 (10th Cir.) (allowing evidence of prior conduct where defendant had not been acquitted on charges stemming from that conduct at the time of trial). Those cases, however, are quite different.

A number of circuits hold that evidence of alleged prior criminal wrongdoing, for which a defendant has been tried and acquitted, is not admissible for any purpose. *Albert v. Montgomery,* 732 F.2d 865, 869–70 (11th Cir.); *United States v. Mespoulede,* 597 F.2d 329, 335 (2d Cir.); *Wingate v. Wainwright,* 464 F.2d 209, 213–14 (5th Cir.). The Third Circuit has declined to embrace a broad constitutional rule, but has reached much the same result by following its pre-*Ashe* collateral estoppel cases that barred the same kind of evidence. *United States v. Dowling,* 855 F.2d 114, 121–22 (3d Cir.), *cert. granted,* — U.S. ——, 109 S.Ct. 1309, 103 L.Ed.2d 579. The Third Circuit's approach is directed to cases in the federal courts. In the case before us Kansas is free to fashion its own rules for criminal cases, short of contravening the collateral estoppel requirements of the double jeopardy clause.

Allowing the Government to introduce evidence such as that introduced here poses two related threats to a defendant's Fifth Amendment rights. First, the Government might bring a second case that it otherwise would not bring but for the evidence of a prior incident—of which the defendant was acquitted—and thus subject him to "repetitive and harassing lawsuits." *See United States v. Standefer,* 610 F.2d 1076, 1092 (3d Cir.), *aff'd,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689. The Government may view scant evidence of a subsequent violation of the law as an opportunity to present evidence of the defendant's prior alleged wrongdoing to a second jury. Second, a jury may convict the defendant, not based on the evidence of the offense for which he is charged, but based on the evidence of the prior incident. An accusation that a defendant has once before committed the act for which he is charged can be the most devastating aspect of the State's evidence. *See Albert,* 732 F.2d at 871. As this evidence "looms larger in the Government's case, it becomes more likely that the matter will prove decisive in the jury's deliberations." *Mespoulede,* 597 F.2d at 335.

Respondents contend that the evidence from the early incident was properly introduced to show intent or absence of mistake or accident. Respondents argue that such evidence was necessary to rebut petitioner's defense that, if there had been a touching, it was not intended to arouse or satisfy petitioner's sexual desires in violation of the Kansas statute under which he was prosecuted. In fact, while accident had been petitioner's defense in the early trial, in the later trial petitioner denied that the

touching occurred at all. Even had petitioner defended on the basis of accident, what was the earlier trial evidence offered to prove? The State characterized the evidence in a pretrial memorandum:

"The prior case would buttress the State's case.... Simply, the defendant's touching ... was not an accident or playful gesture but was done with criminal intent and knowledge of wrongdoing for the defendant did this same or similar acts in a prior identical situation."

The State hoped to establish both that touchings occurred in the prior incident, and that the touchings were not accidents but rather the means by which petitioner intended to arouse or satisfy his sexual desires. The fact of the matter was that there was no crime established in the earlier situation and for our purposes. The jury decided that the incident did not occur.

The State trial court, reviewing the earlier case as required under Kansas law, suggested that the jury based its acquittal on the credibility, or lack of credibility, of the witnesses. This aspect of a prior trial—calling as it does for an observation of the witnesses' demeanor while testifying—is perhaps the least accessible to a court later reviewing the record. In any event, should the prosecution be permitted to have a second jury examine credibility again? Furthermore, every jury decision to a greater or lesser extent calls for credibility determinations. The Court in *Ashe* even indicated that the petitioner's first trial may have turned on the prosecution witnesses' credibility. *Ashe,* 397 U.S. at 439–40, 90 S.Ct. at 1191–92 (observing that in Ashe's second trial "[t]he witnesses were for the most part the same, though this time their testimony was substantially stronger"). Allowing such damaging evidence in on such thin ground substantially undermines the protection of the collateral estoppel doctrine. But beyond that, when a jury finds that the State's evidence is not credible, that means that the State has not proved its case. Witness credibility in a previous trial is no basis upon which to force a defendant to relitigate a matter that he has previously overcome.

As mentioned, four of the seven witnesses called at the second trial had testified at the first trial. Their testimony was essentially the same in both trials. In our view, the second trial reached a point where the prosecution was retrying the defendant as in the first case wherein the jury had acquitted him by a general verdict.

Constitutional collateral estoppel applies to the evidence the State introduced in this case to exclude it. We cannot understand how a rational jury could have grounded a verdict in the later trial upon an issue other than the two essential issues in contention —whether a touching occurred, whether the touching was intentional—both of which the State sought to establish in the earlier trial. *See Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194. The State impermissibly sought to prove exactly what it failed to prove in the previous trial. The trial court's error in admitting the evidence could not possibly have been harmless, as the evidence represented the bulk of the State's case.

For the reasons stated the judgment of the district court is REVERSED and the case is REMANDED with directions that the writ issue in accordance with the mandate to be issued forthwith.