UNITED STATES of America,
Plaintiff–Appellee,

v.

Leon JENKINS, Defendant–Appellant.

No. 89–1532.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1989.

Decided April 27, 1990.

Rehearing and Rehearing En Banc
Denied June 14, 1990.

461

Lynn A. Helland (argued), Detroit, Mich., for plaintiff-appellee.

Cornelius Pitts (argued), Detroit, Mich., for defendant-appellant.

Before KRUPANSKY and RYAN, Circuit Judges; and JOHNSTONE, Chief District Judge.*

RYAN, Circuit Judge.

This case is concerned with application of the double jeopardy provision of the fifth amendment of the federal Constitution to the retrial of criminal charges on which the jury was deadlocked in the first trial. There are two principal issues:

1) Whether the doctrine of collateral estoppel, as incorporated in the fifth amendment bar against double jeopardy, precludes retrying the defendant upon criminal charges that resulted in a hung jury at a prior trial, where the wrongful conduct that is the basis for the unresolved charges was likewise the basis for separate charges of which the defendant was acquitted; and

2) Whether the district court abused its discretion in declaring a mistrial on the unresolved charges.

Our answer to both questions is no and, therefore, we shall affirm the district court's judgment denying the defendant's motion to dismiss the unresolved charges.

## I.

Leon Jenkins is a judge of the 36th District Court of the state of Michigan. The jurisdiction of the 36th District Court includes the adjudication of civil and criminal traffic matters and some misdemeanor violations occurring in the City of Detroit.

In 1984, Sabah Dickow, a Detroit grocery store owner, informed the FBI that a 36th District Court judge was dismissing traffic tickets in exchange for money. The FBI began an undercover investigation. They installed electronic surveillance equipment in Dickow's store and, from 1984 until 1986, recorded several conversations between defendant and Dickow regarding the exchange of money or property for the dismissal or other favorable treatment of traffic and other misdemeanor matters.

Following the FBI investigation, Judge Jenkins was charged in a ten-count indictment as follows:

Count I: Conspiracy to conduct Thirty-Sixth District Court business through a pattern of state law bribery (RICO conspiracy) 18 U.S.C. § 1962(d).

Count II: Conducting Thirty-Sixth District Court business through a pattern of state law bribery (substantive RICO) 18 U.S.C. § 1962(c).

Counts III–VI: Extortion in violation of the Hobbs Act, 18 U.S.C. § 1951.

Counts VII–X: Mail fraud, 18 U.S.C. § 1341.

The case proceeded to trial and, at the close of the government's case, Count I, the RICO conspiracy charge, was dismissed at the government's behest, and Counts VII through X, the mail fraud charges, were severed for separate disposition. That left for jury decision only Count II, the substantive RICO charge, and Counts III through VI, the four Hobbs Act extortion charges.

Count II, the RICO charge, 18 U.S.C. § 1962(c), listed ten separate violations of the state bribery laws, M.C.L. §§ 750.117, 750.118, as predicate offenses. Each predicate offense alleges a separate occasion on which Judge Jenkins corruptly accepted money or property in exchange for favorable disposition of pending court business. Counts III through VI, the Hobbs Act extortion counts, 18 U.S.C. § 1951, are based upon the same acts of bribery alleged in six

* The Honorable Edward H. Johnstone, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

of the ten predicate bribery offenses to the RICO charge.

In the course of a six-week trial, the government sought to prove that Judge Jenkins requested and received money, jewelry, a handgun, groceries, and other property in exchange for the dismissal and "clearing" of traffic violations and other misdemeanor charges pending in the 36th District Court in Detroit. After eight days of deliberation, the jury acquitted the defendant of the four Hobbs Act extortion charges but could not reach agreement on the RICO charge. The district court accepted the not guilty verdict on the Hobbs Act counts and declared a mistrial on the RICO count.

The defendant then moved to dismiss the mistried RICO count, claiming the government is collaterally estopped under the double jeopardy provision of the fifth amendment from reprosecuting him on the RICO charge because the predicate acts of bribery comprising the RICO allegations are the same acts of bribery of which he was acquitted under the Hobbs Act counts.[1] He also contended that the district court abused its discretion in declaring a mistrial on the RICO charge, over his objection.

In rejecting the defendant's collateral estoppel argument, the district court relied primarily upon an assessment of its instructions to the jury. The court concluded that the collateral estoppel theory of double jeopardy does not preclude retrying the defendant on the RICO charges in this case because the Hobbs Act extortion charges contain an element, "inducement," not contained in the state law bribery offenses charged as the predicate acts in the RICO count and, given the court's alternative instructions on the meaning of "inducement," it is impossible to say whether the jurors decided that Judge Jenkins did not "induce" the bribes in violation of the Hobbs Act, or was not bribed at all. If it

were the former, the district court reasoned, double jeopardy, through collateral estoppel, would not bar retrial of the RICO charge. If it were the latter it would. But, since the district court was unable to determine which course the jury followed, it held that retrial was not barred. We agree with the district court's conclusion but not with its reasoning.

The district court also rejected the claim of improper mistrial on the ground that the trial transcript showed that the defendant concurred in the mistrial ruling, and on the further ground that, in all events, the jury, after eight days of deliberation, was hopelessly deadlocked. We agree.

## II. Collateral Estoppel

We turn first to the collateral estoppel claim, the more complex and difficult of the two questions presented. The issue may be restated a bit more precisely as follows:

Whether, on the particular facts of this case, acquittal of Hobbs Act extortion charges, 18 U.S.C. § 1951, precludes retrial of a RICO charge, 18 U.S.C. § 1962(c), previously prosecuted which alleges essentially the same acts of bribery as comprised the Hobbs Act charges but which, because of jury deadlock, is unresolved.

■ Collateral estoppel is included within the scope of the double jeopardy clause of the fifth amendment. *Ashe v. Swenson*, 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195–96, 25 L.Ed.2d 469 (1970). The doctrine precludes an ultimate issue of fact necessarily decided in a defendant's favor in a prior criminal proceeding from being relitigated in a subsequent criminal action against the defendant. *Id.* at 443, 90 S.Ct. at 1194.

■ When, as here, the defendant relies on a general verdict of acquittal to assert collateral estoppel, the entire record must

---

1. In fact, of the ten predicate acts of bribery charged in the RICO count, a) through j), only predicate acts a) through f) were also charged as violations of the Hobbs Act. Therefore, regardless of our holding on the collateral estoppel issue, the government is free to reprosecute the defendant for predicate acts g) through j) of

the RICO count unless, of course, we were to hold that the court erred in declaring a mistrial on the RICO count. The government has conceded, however, that an adverse ruling on the collateral estoppel issue as to the acts of bribery alleged in the Hobbs Act count "would eviscerate the government's case."

be examined to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194. As this court said in *United States v. Benton*, 852 F.2d 1456, 1466 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988):

> Indeed, it is very difficult to determine the basis for an acquittal. An acquittal need not be based on any jury factual finding, as acquittal based on jury lenity can attest. Unless it can be said with definite assurances and by clear evidence, that the jury found a fact in the defendant's favor, which is also a necessary element of the crime sought to be reprosecuted, *Ashe* will not assist a criminal defendant.

■ Application of the collateral estoppel doctrine is premised on the assumption that the jury acted rationally and found certain facts in reaching its verdict, *United States v. Frazier*, 880 F.2d 878, 883 (6th Cir.1989), and can apply in cases such as this in which the jury acquits on some charges in a multi-count indictment but cannot agree on others. *Id.*

> In applying principles of collateral estoppel our ultimate determination must be whether the "single rationally conceivable issue in dispute" was the issue on which the jury found for the defendants on each acquitted charge at the first trial. *Ashe v. Swenson*, 397 U.S. at 445, 90 S.Ct. at 1195.

*Id.* at 883–84. Before addressing the defendant's argument directly, a brief look at the RICO statute and the Hobbs Act is in order.

### A.

■ Conviction under RICO requires proof that defendant is associated with an enterprise which affects interstate commerce and conducted enterprise affairs through a pattern of racketeering activity, in this case bribery, in violation of state law. *See, United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33

(1984). Michigan law makes it a felony for a judicial officer to corruptly accept or receive a gift with the understanding that the gift will influence him in connection with the performance of his official duties. M.C.L. § 750.118.

Conviction under the Hobbs Act, as charged in this case, requires proof of extortion and threatened interference with commerce. *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). In 18 U.S.C. § 1951(b)(2), extortion is defined as "the obtaining of property from another, with his consent, *induced* by wrongful use of actual or threatened force, violence, or fear, or *under color of official right*." (Emphasis added.) The first questions to be resolved are whether "inducement" is a required element under a Hobbs Act extortion charge when property is alleged to have been taken "under color of official right" and, if not, whether the jury in this case was so instructed.

### B.

We note at the outset that a plausible argument can be made, although neither party makes it, that inducement is not an element of extortion under the Hobbs Act when the extortion is charged as obtaining property "under color of official right."

The Hobbs Act, with appropriate ellipsis, provides, in pertinent part:

> (a) Whoever ... obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by ... extortion ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
>
> (b) As used in this section—
>
> . . . .
>
> (2) The term "extortion" means the obtaining of property from another, with his consent, *induced* by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951. (Emphasis added.)

Reading the statutory definition precisely as it is written, and paying attention to the punctuation, it appears that only

"wrongful use of actual or threatened force, violence, or fear, ..." must be "induced" in order to constitute extortion, since the "under color of official right" version of extortion is set apart from the "induced" clause that precedes it by a comma followed by the disjunctive "or." Thus, a plausible reading of subsection (b)(2) is that extortion is the crime of obtaining property from another, with his consent, either

> (1) "induced by wrongful use of actual or threatened force, violence, or fear,...."

or

(2) "under color of official right."

If that is a correct reading of the definition of extortion in § 1951(b)(2), and *if* the district court in this case instructed the jury to that effect, defendant would be correct in his collateral estoppel double jeopardy argument because there would be no inducement element to "under color of official right" extortion. Consequently, there would be no distinction between bribery/extortion under the Hobbs Act and Michigan state law bribery alleged as predicate acts under the RICO count. If the jurors had been instructed in that way, they would not have been required to decide, under the Hobbs Act count, whether Judge Jenkins "induced" the bribes allegedly extorted.

But Judge Jenkins does not, even now, claim that the statute should be read as we have hypothecated, eliminating inducement as an element of "under color of official right" extortion. He argues, instead, that while inducement is indeed an element of "under color of official right" extortion under subsection (b)(2), the trial court's instructions allowed the jury to find that mere passive acceptance of a bribe satisfied the inducement element in this case and, moreover, that *United States v. Butler*, 618 F.2d 411 (6th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980), is authority for that proposition.[2] What is more important, however, is that the district judge did not read the statute as we have suggested it might be read but, instead, instructed the jury explicitly and repeatedly that inducement is an element of the extortion charged in this case. And, the defendant did not object to the court's instruction that inducement was an element the government was required to prove. Concerning the significance of the court's instructions on inducement, we will have more to say later.

The defendant's argument, reduced to its simplest, is that he cannot be retried for the RICO bribery charges because the Hobbs Act violations of which he was acquitted alleged, and the proofs adduced at trial addressed, the identical acts of bribery as were charged as predicate acts in the RICO count. The only contested issue at trial, defendant claims, was whether Judge Jenkins accepted and received bribes in exchange for the promise to dismiss, or the dismissal of, traffic tickets. Moreover, he argues, the trial court effectively removed "inducement" from the case as an element of the Hobbs Act extortion charges by instructing the jury that mere passive acceptance of a bribe is a violation of the Hobbs Act.

The government's response is that while the acts of bribery alleged in the RICO and Hobbs Act counts are the same, conviction of the Hobbs Act extortion charges requires proof that the defendant *induced* the payment of the bribes alleged, an element not required for proof of the RICO bribery charge. The government also argues that the trial court instructed the jury that "inducement" is an element of the Hobbs Act the government was obligated to prove.

The defendant's rejoinder is that while ordinarily inducement is an element of a Hobbs Act extortion violation, when the property extorted in the bribe is obtained "under color of official right" the inducement element is satisfied upon proof of mere acceptance of the bribe. For that proposition the defendant cites *United States v. Butler*, 618 F.2d 411 (6th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024,

---

2. We shall address, below, our understanding of *Butler.*

65 L.Ed.2d 1121 (1980). Therefore, the argument goes, when the jury acquitted Judge Jenkins of the Hobbs Act charges which alleged the "under color of official right" version of extortion, in which inducement is the equivalent of "mere acceptance of a bribe," it necessarily decided that the defendant did not accept bribes and, therefore, retrial for the same conduct, under the RICO count, is foreclosed.

The defendant's argument that "mere passive acceptance of a bribe" by one who obtains property "under color of official right" is a violation of the Hobbs Act without any additional proof of inducement is derived primarily from this court's decision in *Butler*, and, secondarily, from the concluding sentence of that portion of the district court's instructions to the jury in which it provided the jury with three examples of circumstances it might find constituted "inducement."

We address first defendant's reliance on *Butler* for his argument that proof of "mere acceptance of a bribe" by Judge Jenkins would have made proof of inducement unnecessary.[3]

### 1.

The language in *Butler* upon which the defendant relies, although set forth in defendant's brief without quotation and out of context, is the following:

> [W]e hold that any wrongful use of a public official's power for private personal gain is proscribed by the Hobbs Act.

618 F.2d at 419. And,

> [The] contention that a distinction under the act is drawn between the voluntary payment of bribe, and extortion, by way of the inducement or initiation of such payment, is a technical overdrawn distinction which is in keeping with neither

the legislative intent of the statute, nor recent case law holding that in cases of misuse of official power, bribery and extortion are not mutually exclusive. *United States v. Harding,* 563 F.2d 299 (6th Cir.1977), *United States v. Kahn,* 472 F.2d 272 (2d Cir.1973), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973), *United States v. Hall,* 536 F.2d 313 (10th Cir.1976), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976), *United States v. Hathaway,* 534 F.2d 386 (1st Cir.1976), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976).

*Id.* at 417.

We think the defendant reads too much into *Butler,* and we shall consider the case in some detail since it is the principal authority upon which the defendant relies.

*Butler* is, to be sure, a difficult opinion from which to extract a rule concerning the elements of extortion under the Hobbs Act. The defendants in that case, Butler and Hayden, were public officials charged, *inter alia,* under the Hobbs Act with "under color of official right" extortion; that is, accepting bribes. The *Butler* court was concerned, in the part of its opinion that concerns us, with whether the trial court erred in failing to instruct the jury that it must find that the defendants there "had 'initiated' or 'induced' the illicit transfer of payment." [4]

Rather than addressing the stated question directly, the *Butler* court considered at length whether, in order to prove "under color of official right" extortion under the Hobbs Act, the government was required to prove, in addition, that the property was obtained through the use of *"threatened force, violence, or fear."* Recall that the stated issue in *Butler* was whether failure to give an "inducement" instruction was

---

**3.** It is interesting to note that, in his trial brief, defendant stated: "Although receipt of benefits by a public official is a necessary element of [a Hobbs Act violation], there must also be proof that the public official did something, under color of his public office, to cause the giving of benefits."

**4.** Interestingly, that issue was framed in *Butler* because the defendant was arguing that the

government was required to prove inducement as an element of "under color of official right" extortion and the government's position was that "the mere passive acceptance of a bribe, ... whether the solicitation of, or the mere acceptance of, illicit payments for the desired 'official action,' [is] a clear abuse of Butler's office, falling within the proscriptions of the [Hobbs] Act." 618 F.2d at 417.

error. In support of its negative answer to that question, the *Butler* court cited a number of cases from this circuit and others, but relied primarily on *United States v. Harding,* 563 F.2d 299 (6th Cir.1977), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978).

*Harding,* unlike *Butler,* is a case about force, coercion, and duress, not inducement. In *Harding,* the court considered whether, in order to obtain a conviction for extortion "under color of official right," it is necessary to prove that the property was obtained not only under color of official right but also through the use of fear, coercion, or duress. The *Harding* court concluded that force, coercion, and duress are not elements of "under color of official right" extortion, and, since the point was not at issue, never addressed the question of whether inducement is. The *Butler* court cited a host of other cases which, likewise, are not "inducement" cases but which address, as *Harding* does, the question whether extortion "under color of official right" requires proof of coercion, force, or duress.

The *Butler* opinion, whose discussion shifts back and forth between "force, coercion and duress" on the one hand and "inducement" on the other, concluded, after considerable discussion that "a Hobbs Act conviction is sustainable upon a finding that property was unlawfully obtained either under color of official right or through force or duress." 618 F.2d at 418. In what would appear to be its dispositive holding, the *Butler* court stated:

> We then concluded that "[t]hus extortion defined as the wrongful obtaining of property under color of official right need not include the element of force or duress, and could include such activity as is commonly considered to be bribery." *Harding,* 563 F.2d at 305.

618 F.2d at 420.

The court, in *Butler,* nowhere stated that inducement is not an element of "under color of official right" extortion, but did state that "extortion ... under color of official right need not include the element of force or duress." 618 F.2d at 420 (citing

*Harding* ). The *Butler* court further confused Hobbs Act "coercion and duress" with "inducement" by concluding its decision with a quotation from *United States v. Braasch,* 505 F.2d 139, 151 (7th Cir.1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561 & 1562, 43 L.Ed.2d 775 (1975), which states that in an "under color of official right" extortion case,

> it matters not whether the public official induces payments to perform his duties or not to perform his duties, or even, as here, to perform or not perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951. That such conduct may also constitute "classic bribery" is not a relevant consideration.

618 F.2d at 420 (quoting *Braasch,* 505 F.2d at 151).

While the foregoing quotation from *Braasch* refers to "whether the public official *induces* payments," *Braasch,* like the *Harding* case, and all of the other federal cases cited in *Butler,* is not a case having to do with whether inducement is an element of extortion. It is a case having to do with whether "fear, coercion, or force" are elements of extortion under color of official right. Not only did the *Braasch* court *not* hold that inducement is immaterial "under color of official right" extortion, to the contrary, it observed in a footnote that:

> [C]oercive extortion is not the only type outlawed by the Act. The other is *inducing* payoffs under color of official right.

505 F.2d at 151, n. 8. (Emphasis added.)

While *Butler,* an inducement case, discusses at length an issue not presented there and cites authorities from this court and other courts for propositions not at issue there, the opinion nevertheless can be read to conclude, given its affirmance of the lower court's ruling, that inducement need not be pleaded, proved, or instructed upon in a Hobbs Act case alleging extor-

tion "under color of official right".[5]

Despite the government's concession, one reads *Butler,* and all the cases cited therein, in vain to find any analysis or authority for the conclusion that inducement is not an element of the form of extortion charged against Judge Jenkins in this case. Moreover, the clear weight of federal authority, including cases decided in the Second and Ninth Circuits subsequent to *Butler,* hold that inducement is indeed a necessary element of the form of extortion "under color of official right." *See United States v. Aguon,* 851 F.2d 1158, 1162–67 (9th Cir.1988), *United States v. O'Grady,* 742 F.2d 682, 687 (2d Cir.1984), *United States v. Bucci,* 839 F.2d 825, 827 (1st Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988).

### 2.

In all events, even if *Butler* may properly be read to exclude inducement as an element of the extortion charged against Judge Jenkins, it does not assist him in this case.

At trial, the government, understandably wary of assuming that *Butler* abolished the traditional requirement that inducement be pleaded and proved in "under color of official right" Hobbs Act extortion cases, proceeded on the assumption that inducement is always an element of extortion under the Hobbs Act. It specifically alleged that Judge Jenkins induced the payment of each of the bribes he allegedly received; it offered some evidence of inducement; and it argued to the jury that it had proved inducement. In addition, the government submitted proposed jury instructions to the district court specifically requesting that the jury be instructed that inducement is an element the government was required to prove beyond a reasonable doubt in the case. Had the government accepted the reading of *Butler* defendant now urges—but did not urge at trial—its burden to prove the Hobbs Act counts would have been one element lighter.

What is of greater importance, however, is that the district court assumed that inducement is an element of "under color of official right" extortion and charged the jury repeatedly, and at some length, that it could convict Judge Jenkins of the Hobbs Act violations *only* if it found, beyond a reasonable doubt, that he had induced the payment of the alleged bribes. The court's charge to the jury included the following:

> The Hobbs Act, Title 18, United States Code, Section 1951 provides that:
>
> (a) Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce ... [by obtaining property from another with that person's consent *induced* under color of official right], or attempts ... so to do,
>
> is guilty of an offense against the United States.

(Emphasis added.)

And,

> In order to establish the offense charged in counts III through VI the government must prove five essential elements.
>
> *FIRST:* That the Defendant received the money or other property described in each of the counts, from the person identified in the count;
>
> *SECOND:* That the money or property was not owed to the Defendant through the proper conduct of his office;
>
> *THIRD:* That the Defendant *induced* or caused the giving of this property or money;
>
> *FOURTH:* That the Defendant knew when he received the property or money that it was given to him because of his power and position as a judge of the 36th District Court; and

Brief for the United States at 16 (citing *Butler*).

---

**5.** Indeed, the government declares:

It is true that the Sixth Circuit has stated that the mere passive acceptance of a bribe violates the Hobbs Act.

*FIFTH:* That as a result, interstate commerce was affected.

(Emphasis added.)

And,

As I told you earlier, in order to convict Defendant of any of the charges contained in counts III through VI, you must find not only that the Defendant received money or property from the persons named in those counts, but you must also find that the Defendant in some way *induced* the payments that he received.

Such *inducement* can take many forms and may be very subtle. You may find the necessary *inducement* if you find that defendant made any kind of request, solicitation, or demand for the property he received, and you may find that Defendant made such a request or demand if you find that he requested goods or services from the persons named in each count without offering to pay for them. You may also find inducement if you find that the Defendant promised or delivered some official action in exchange for the items given him. Even if you do not find that the Defendant promised or gave anything in return for any money and property that he received, and he did not make any request or demand to solicit the payments, you may still find inducement upon a finding of repeated acceptance over a period of time of substantial benefits by Defendant, that is, benefits of a nature and size which reasonably could affect Defendant's exercise of his duties.

(Emphasis added.)

The defendant did not, at trial, object to the court's charge that inducement was an element of the Hobbs Act counts. Indeed, a significant portion of the defense counsel's argument to the jury was that Judge Jenkins did not induce payment of the money and other property given to him by informant Dickow but that Dickow pushed or forced the property on an innocent and unsuspecting Judge Jenkins, and that if

any bribery occurred it was as a result of entrapment by the government.

■■ It is incontestable that the two offenses submitted to the jury, the RICO bribery charge in Count II and the Hobbs Act extortion/bribery charges in Counts III through VI, were not the same offenses in that the Hobbs Act offenses required the jury to find that Judge Jenkins induced the payments he allegedly received in order to convict him. And, while the district court's instructions, stating that "inducement can take many forms," offered three conceivable scenarios in which the jury might have found the inducement and acknowledged that in two of them the inducement "may be very subtle," the court, for all that, was defining "inducement" and requiring proof of inducement to convict. Therefore, even if the defendant is correct that *Butler* removed inducement as an element of the Hobbs Act, this case was not pleaded, tried, submitted to the jury, or decided under the apparent holding of *Butler.*

In the course of its eight days of deliberation, the jury considered two sets of charges: the RICO charge in which the state statutory bribery was at issue and the Hobbs Act charges in which state statutory bribery plus the element of inducement was at issue.[6] The jurors acquitted the defendant of offenses that required proof of state law bribery *plus* the additional element of inducement and were deadlocked on the state law bribery charges laid under the RICO count which included no element of inducement. The offenses were not the same and there is every reason to conclude, upon examination of the whole record, that it was the government's failure to prove inducement that resulted in the Hobbs Act acquittals. The government's evidence on inducement was very weak. In addition, the defense counsel argued to the jury that inducement had not been proved and that the cash and property was forced on Judge Jenkins by informant Dickow.

---

**6.** While the Hobbs Act offenses and the RICO offense are distinguishable on the basis of their differing interstate commerce elements, there is no justiciable issue in this case about the interstate commerce elements.

Moreover, had the jurors acquitted Judge Jenkins of the Hobbs Act counts because they found the acts of bribery, as opposed to the inducement, had not been proved, they would likely have acquitted him of the RICO bribery count as well. They did not do so, and since they acquitted him of the offenses carrying the additional element and deadlocked on the RICO bribery charges it is logical to conclude the jurors decided the inducement element and not the bribery elements against the government.

We conclude, therefore, that the government is not collaterally estopped from retrying the defendant on the RICO bribery charges.

### III. Mistrial Declaration

#### A.

When, after eight days of deliberation, the jury announced it had reached a verdict on the Hobbs Act charges but could not reach a verdict on the RICO charge, the court determined the jurors were hopelessly deadlocked, accepted the verdict of acquittal on the Hobbs Act counts, and declared a mistrial on the RICO count.

Defendant contends the district court abused its discretion in granting a mistrial over defendant's objection without allowing him to make a record of his reasons for objecting.

"The prosecutor must demonstrate 'manifest necessity' for any mistrial declaration over the objection of the defendant." *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978) (citing *United States v. Perez*, (22 U.S.) 9 Wheat 579, 580, 6 L.Ed. 165 (1824)). However, the trial judge has broad discretion in deciding whether or not there is "manifest necessity" when the mistrial is based on the judge's belief that the jury is unable to reach a verdict. *Id.* 434 U.S. at 509, 98 S.Ct. at 832. "The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court." *Arizona v. Washington*, 434 U.S. at 510, 98 S.Ct. at 832.

■ Despite the defendant's contention, our review of the record reveals that the defendant did not object to the grant of a mistrial on the RICO count but, rather, moved the court to grant his motion for directed verdict on the RICO count with the argument that the RICO bribery predicate offenses were the same acts of bribery alleged in the Hobbs Act counts of which the defendant had just been acquitted. When the court expressed its intention to declare a mistrial on the RICO count because the jury had deliberated to a deadlock, defense counsel said, "I don't have any problems with that...." Thus, we conclude that defendant did not object to the declaration of a mistrial.

#### B.

Defendant also asserts that the court failed to comply with the factors set forth in *Jones v. Hogg*, 732 F.2d 53 (6th Cir.1984), when it declared a mistrial. The court in *Jones* held that several factors must be considered when determining whether a trial court abuses its discretion in declaring a mistrial. *Id.* at 56. The factors include:

1) a timely objection by the defendant;
2) the jury's collective opinion that it cannot agree on a verdict;
3) the length of jury deliberations;
4) the length of the trial;
5) the complexity of the issues presented to the jury;
6) any proper communication which the judge has with the jury;
7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict; and
8) the trial judge's belief that additional prosecutions will result in hung juries.

*Id.* (Citations omitted.) The *Jones* court noted that the trial judge need not make express findings on the record, but if alternatives to mistrial exist then the trial court may have abused its discretion in declaring a mistrial. *Id.* at 56, n. 1. The *Jones* court then remanded the case for further proceedings because the trial record was so inadequate on the mistrial declaration that

the court could not determine whether the trial court properly exercised its discretion in declaring mistrials on the defendant's *three* prior prosecutions. *Id.* at 58. (Emphasis added.)

Here, the trial court gave reasons for granting a mistrial on the RICO count. It found the jury had been deliberating for eight days and was unable to reach a verdict on that count and stated it was satisfied that further deliberations would be pointless. At the hearing on defendant's motion to dismiss, the district court stated that it had declared a mistrial only after it determined that the jurors were "hopelessly deadlocked." The court explained the events leading up to the mistrial and found that defendant concurred in the declaration of mistrial and, therefore, the decision to declare a mistrial was not an abuse of discretion.

 The trial court's decision to declare a mistrial in a hung jury case is afforded great deference by the reviewing court since the trial court is in the best position to assess whether the jury can reach a just verdict if it continues to deliberate, *Arizona v. Washington,* 434 U.S. at 510, n. 28, 98 S.Ct. at 832–33, n. 28. On the record made below, we are satisfied that the trial court did not abuse its discretion.

### C.

 Finally, defendant contends that the court's declaration of mistrial was an indication of the court's bias and prejudice against defendant throughout the trial and was merely an attempt by the court to give the prosecution a second chance to try defendant. Defendant cites the footnote in *Arizona* in which the United States Supreme Court noted:

> If the record reveals that the trial judge has failed to exercise the "sound discretion" entrusted to him, the reason for such deference by an appellate court disappears. Thus, if the trial judge acts for reasons completely unrelated to the trial

problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate.

434 U.S. at 510, n. 28, 98 S.Ct. at 833, n. 28.

After careful scrutiny of the record, we find no abuse of discretion or indication that the district court was biased or prejudiced against the defendant. The court's comments to which the defendant makes reference, when viewed in their entirety, reflect instances during the six-week trial where the court and defense counsel disagreed, but they offer not the slightest indication of bias and prejudice.

### IV.

 Defendant also argues, as to the RICO count, that the court should have received the jury's verdict as to all the predicate state bribery offenses upon which the jurors reached agreement as indicated on the special verdict form.[7] However, defendant cites no authority for the proposition that a court may accept the jury's responses to such a special verdict form when the jury states, through its foreperson, that it cannot reach a verdict on the underlying count of which the predicate offenses are a part.

We agree with the prosecution that the jury's notations on the special verdict form were merely preliminary votes and not entitled to any weight since the jury was unable to reach a verdict on that count. As the trial court stated, the special verdict form setting forth the predicate state bribery acts under RICO was merely advisory.

### V.

We AFFIRM the district court's decision denying the defendant's motion to dismiss the mistried RICO count, and REMAND for further proceedings.

---

**7.** As part of its deliberations on the RICO charge, the jury was given a form entitled "Special Question" and was instructed to mark which of the ten predicate state bribery offenses, if any, defendant committed. The jury informed the court that it could not agree on two of the ten predicate offenses and, therefore, *could not reach a verdict on the RICO charge.*