**UNITED STATES of America**

v.

**Harvey SHENBERG, et al.**

**No. 91–708–CR.**

United States District Court,
S.D. Florida.

July 15, 1993.

John O'Sullivan, Ass't U.S. Atty., Lawrence D. LaVecchio, Dennis Bedard, Sp. Ass't U.S. Attys., Miami, FL, for plaintiff.

Richard Strafer, Miami, FL, for defendants David Goodhart and Alfonso Sepe.

James Jay Hogan, Miami, FL, for defendant Goodhart.

Ed Carhart, Miami, FL, for defendant Alfonso Sepe.

Stephen Bronis, Miami, FL, for defendant Harvey Shenberg.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the court upon the defendants' motions to bar reprosecution as to acquitted counts. Mr. Goodhart and Judge Shenberg have specifically adopted the comprehensive motion filed on behalf of Judge Sepe. As the issues presented are nearly identical, the court will treat the motions as one consolidated motion on behalf of all defendants.

### FACTS

The trial of this cause, known as Operation Court Broom, began on September 21, 1992, and concluded with the verdict of the jury on April 26, 1993. This was a seven month trial on a 91 page superseding indictment that included more than 55 counts involving the four defendants on trial.[1] The instructions to the jury were 72 pages and the verdict form was thirteen pages including 111 separate interrogatories. The jury deliberated for more than a month, reaching a verdict as to some counts but not as to others.

The jury acquitted Judge Phillip Davis of all counts. Judge Alfonso Sepe was acquitted of 28 counts and convicted of none; however, the jury reached no verdict as to five other counts, including the RICO conspiracy and substantive RICO counts. Judge Harvey Shenberg was acquitted of four counts, with the jury unable to reach a verdict as to three counts (including the substantive RICO count). Judge Shenberg was convicted of Count 1 (RICO conspiracy) and Count 90 (attempted extortion under color of official right). David Goodhart was convicted of RICO conspiracy only, acquitted of one count, with the jury unable to reach a verdict as to five other counts. In sum, two defendants were convicted of a total of three counts.

The issue now before the court is whether the government can use the allegations of the counts on which defendants were acquitted as predicate acts to establish the RICO conspiracy and substantive RICO charges in Counts 1 & 2.

### DIRECT ESTOPPEL

The defendants assert that the doctrine of direct estoppel prevents the United States from using those counts on which defendants were acquitted as Racketeering Acts in support of the RICO counts. *United States v. Bailin*, 977 F.2d 270 (7th Cir.1992). The court agrees that *Bailin* is the case most directly on point on this issue.

The court notes from the outset that the holding of *Bailin* applied only to *substantive* RICO counts and not RICO conspiracy counts. Issue preclusion as to RICO conspiracy was not resolved in *Bailin* because the defendants apparently failed to appeal that claim. *Id.* at 283 n. 20. Accordingly, the court will treat the substantive RICO and RICO conspiracy counts separately.

In *Bailin*, the Seventh Circuit carefully analyzes the relationship between the Double Jeopardy Clause and more general doctrines of estoppel. *Id.* at 274–275. The essence of the relevant holding in *Bailin* is that estoppel can apply in criminal prosecutions even when double jeopardy does not. *Id.* at 275–276. The court in *Bailin* also makes clear a point which the government seems unwilling

---

1. The other defendants in this indictment were severed by the court.

to accept here—that direct estoppel applies to a continuing prosecution even if double jeopardy and collateral estoppel do not. As phrased by the court therein:

> In a retrial of a mistried count in a multi-count indictment, does direct estoppel bar the government from relitigating issues that were necessarily and finally decided in the defendant's favor by reason of the jury's partial acquittal on other counts? We hold that it does.

*Id.* at 276.

Relying on the case of the *United States v. Bailin,* and the reasoning herein, this court also holds that direct estoppel bars the government from relitigating those issues necessarily decided by the jury's partial acquittal.

■ The court stresses that this holding is strictly based on the doctrines of issue preclusion and direct estoppel, and not on double jeopardy grounds. Double jeopardy protections do not attach in this case because this is not a "subsequent" prosecution, but a "continuing" prosecution of the defendants. A retrial after a "hung jury" is not prohibited by the Double Jeopardy Clause even if a defendant was partially acquitted at the first trial. *Richardson v. United States,* 468 U.S. 317, 323, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984).

■ While it is true that estoppel principles are embodied in the Fifth Amendment's prohibition against double jeopardy, it also appears that issue preclusion may derive from the federal common law. This issue was not specifically decided in *United States v. Oppenheimer,* 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916), or in *Bailin,* 977 F.2d at 274 n. 3. This court need not pinpoint the historical underpinnings of the estoppel doctrine to make its holding in this case. It is well settled that collateral estoppel applies to criminal cases.[2] *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

■ The government's response in opposition to defendants' motion centers around the established proposition that subsequent

RICO prosecutions are permitted after prior convictions on the overt acts alleged in the conspiracy. The essence of this argument is that double jeopardy principles do not prevent such a reprosecution. The government misses entirely the thrust of defendants' motion and the holding of *Bailin.* As stated by the Seventh Circuit:

> A criminal defendant has no need for the benefits of issue preclusion if his entire prosecution is barred by double jeopardy; if double jeopardy bars the entire prosecution then a court need not consider whether particular issues are precluded from relitigation. (footnote omitted). Precisely contrary to the government's assertion, collateral estoppel is applicable in criminal cases *only when double jeopardy is not.* (emphasis in original).

*Bailin,* 977 F.2d at 275. Thus, while estoppel is "embodied in" or "incorporated in" the Double Jeopardy Clause, it is not strictly coextensive with double jeopardy. As such, estoppel principles may be implicated even when double jeopardy is not. *Id.*

Accordingly, the issues which were necessarily decided by the jury's acquittal may not be used as predicate acts to establish the substantive RICO charge in Count 2 of the superseding indictment.

### RICO CONSPIRACY

One issue not decided in *Bailin* is whether the holding would apply to a RICO conspiracy charge. The defendants note this fact in a footnote, and direct the court to *United States v. Gornto,* 792 F.2d 1028 (11th Cir. 1986). The government makes no specific mention of this question, and accordingly offers little guidance to the court on this discrete issue.

At first glance it may appear that the above analysis should apply to a RICO conspiracy charge. If an issue has been "decided" for one purpose, it has been decided for all purposes under the estoppel doctrine. A close analysis of the peculiar nature of a

---

**2.** As in *Bailin,* this court agrees that the rules and analysis of collateral estoppel govern direct

estoppel as well. *Bailin,* 977 F.2d at 280 n. 15.

RICO conspiracy charge, however, indicates that this is not necessarily so.

▇▇▇ If the court finds that the jury decided a substantive issue (i.e., that the defendant did not take the bribe money), it does not necessarily mean that the defendant did not *agree* to take the money—it only indicates that the government did not prove the bribe was ever completed. This simple proposition is nothing more than a restatement of black letter law. Conspiracy to commit a crime is separate and distinct from the underlying crime, and an acquittal as to one charge does not affect the verdict as to the other. A defendant who is .acquitted of a substantive count may be retried on a "hung" conspiracy count. *United States v. Gornto,* 792 F.2d 1028, 1034–35 (11th Cir.1986). Thus, even if a jury found that a defendant was not guilty of a substantive offense, there would not be a "necessary finding" that the defendant did not *agree* to commit that offense. Under RICO conspiracy, the government must show, *inter alia,* that the defendants agreed to commit (or in the Eleventh Circuit, agreed that others would commit) two offenses which would in turn constitute two predicate acts.

▇▇▇ Therefore, the question of law before the court is whether the estoppel doctrine applies to a retrial of conspiracy charges after an acquittal on the underlying substantive charges. As stated previously, the court in *Bailin* did not address this particular issue; fortunately, the Eleventh Circuit has. *Gornto,* 792 F.2d 1028.

In *Gornto,* the defendant was acquitted of two substantive drug possession charges but the jury was hung on two conspiracy charges. At retrial, in order to prove the conspiracy charges, the government elicited testimony that the defendant was involved in the drug transactions for which he had previously been acquitted. The defendant argued that district court erred in allowing the testimony. The Eleventh Circuit agreed, holding that collateral estoppel barred the government from proving the conspiracy charges (the agreement) with evidence of the commis-

sion of those crimes for which defendant had already been acquitted. *Id.* at 1031.

As noted by the court in *Gornto:*

It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded that he did not commit. Otherwise, a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime.

*Id.* at 1031, *quoting Wingate v. Wainright,* 464 F.2d 209, 215 (5th Cir.1972).

The *Gornto* analysis is directly relevant to the instant case. The government is not precluded from proving that an agreement to commit certain crimes (predicate acts) existed. However, it may not prove that agreement with the evidence of the underlying crime which the jury has already said the defendant did not commit.

### WHICH ISSUES ARE PRECLUDED?

The court is still faced with determining what issues were necessarily decided by the jury's verdict. Again, the *Ashe, Bailin* and *Gornto* cases are instructive. In *Ashe,* the Supreme Court stated that:

the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'

397 U.S. at 443, 90 S.Ct. at 1194 (other citations omitted).

The court in *Bailin* went on to note that a defendant must identify specific issues relevant to the acquittals, prove that those issues were necessarily decided, and prove that the

those issues will be "ultimate" in a retrial. *Bailin*, 977 F.2d at 281. In its response, the government argues that Sepe (and presumably the other defendants) has not met his burden to show "what facts it is that he wants precluded." Government's Response at 5.

█ As noted by the defendants, the usual "tricky" proposition of making this determination is not as difficult in this case. Most of the crimes for which these defendants have been acquitted were charged, *identically*, as racketeering acts. Thus, the government must prove that the defendant committed that crime as an essential element and "ultimate issue" to support the RICO charges. Here, because of the complete identity of elements, whatever the jury found lacking for the substantive offense is necessarily lacking for the predicate act.[3] In other words, for most counts, the court need not speculate as to the underpinning of the jury's decision because, whatever the reason, it applies to the predicate act as well as the substantive count.

Even if the court embarked to determine what the jury decided, the defendants have met their burden. The defenses in this case were not based on "technicalities." The defendant Sepe, for example, consistently maintained that he did not get money from defendant Goodhart. He argued that his ruling on the *Carrillo* motion to suppress was based on the law and not because of a bribe. To find that the jury "nullified" on this count as to Sepe or based their verdict on some "technical ground" (i.e., the interstate commerce element) would be to wholly ignore the charges, the pleadings, and the evidence provided by both parties.

The government argues that the defendants have not reached "square one" on this issue. The application of the standard that the government advocates, however, is overly stringent and it ignores the result in *Gornto*. That court used a rational approach to determine what issues had been decided, and refused to apply an overly rigid analysis to the issue. Applying the same "realism and ra-

tionality" here to those counts which have identical predicate acts, the court finds that the defendants have met their burden. In the interest of clarity, the court will discuss each defendant below.

In plain English, Alfonso Sepe was accused of various extortion and bribery charges for appointing attorney Arthur Massey to cases in exchange for kickbacks in the form of lunches at Buccione's and parties at Art Bruns' Executive Club. The payments sent through the mail to Mr. Massey from Dade County (for work which was in fact done) constituted the mail fraud counts against Judge Sepe. Judge Sepe's defense, as elicited through cross-examination and in argument, was that he did not know about or instruct Mr. Massey to pay his bills. The absence of strong evidence at trial could easily give rise to reasonable doubt. To be frank, these counts barely survived Judge Sepe's Rule 29 motions made at the end of the government's case.

Indeed, even after the court allowed last minute evidence in the form of lunch and dinner receipts from Buccione's, the government's proof was still weak. After cross examination, a jury could easily have concluded that Judge Sepe was the *victim* of overpaying on many of the checks, and that some of the same checks had been paid more than once, at various times, by various people. One government witness testified that Judge Sepe, upon hearing that his bill was "taken care of," angrily rebuked the owner of Buccione's and ordered that such should never occur again. Simply put, there was little proof that Massey paid Sepe's bills and even less proof that said payments constituted "kickbacks" for court appointments. Similarly, the evidence that various debts at the Art Bruns' club were supposed to be paid on behalf of Judge Sepe was less than overwhelming.

The jury clearly rejected what little evidence existed on these charges by acquitting on *all* these related counts. Because of the acquittals on Counts 4, 61–80 and 89, the

---

**3.** It should also be noted that some of the acquitted counts were conspiracy charges themselves, thus the issue of whether a defendant "agreed" to do something has already been decided and may likewise not be used to support the RICO conspiracy charge.

government will not be permitted to support its RICO charges with evidence that Sepe committed the acts alleged in Racketeering Acts 2 and 5.

The most serious charges against Sepe involved the corrupt manipulation of cases in Counts 95–98 and 100–102. The government's *strongest* charge was that Judge Sepe granted a motion to suppress for a bribe of $150,000.00 in the *Carrillo* case. Judge Sepe's defense was that codefendant Goodhart was "rainmaking," that Sepe was unaware that Goodhart had represented to Takiff that the case was fixed, and that the motion to suppress was granted because the law required it. The government traced some of the $150,000.00 to Sepe, and one witness (Roy Gelber) testified that Sepe was aware of the deal and had delivered and split part of the bribe money with him. Judge Sepe argued that Gelber was lying, and that it was Goodhart who actually delivered the money to Gelber.

The jury acquitted Sepe of all of these charges.

The jury clearly rejected Gelber's testimony as it pertained to Sepe, finding that he did not commit the alleged crimes. Accordingly, the government may not support its RICO charges against Sepe with the offenses alleged in Racketeering Acts 9 and 10.

As previously noted, as to Count 1, the government may prove that Sepe *agreed* to commit those acts which the jury has now said he did not commit. Thus, technically speaking, the predicate acts remain viable for the conspiracy count. The government may charge and prove the "agreement," but it cannot do so by using the same evidence already presented to and rejected by the first jury. *Gornto*, 792 F.2d at 1031. Thus, practically speaking, the Racketeering Acts remaining as to Sepe are portions of Racketeering Act 1 (Count 3) and portions of Racketeering Act 11 (Count 103) (the court has granted a post trial Rule 29 motion as to Count 104).

Judge Shenberg was acquitted of counts 87 and 88 (Racketeering Act 4) and Counts 97 and 98 (Racketeering Act 10). Counts 87 and 88 involved $11,1000.00 given by the government's cooperating individual, Ray Takiff, to Roy Gelber. Gelber's testimony tied Shenberg to the money. The essence of the Shenberg defense was that Gelber was lying and that he had acted with Takiff alone and without Shenberg's knowledge. The jury heard much testimony regarding the activities of Takiff, Gelber, and Shenberg. The jury in fact convicted Shenberg of two counts, one of which was a transaction involving all three men. Once again, it is clear that the jury rejected that portion of the government's case which alleged that Shenberg was involved in the particular transaction alleged in Counts 87 and 88.

Harvey Shenberg was also charged as being part of the alleged "fixing" of the *Carrillo* case. He argued that he had withdrawn from the conspiracy as early as 1990. The jury rejected part of this claim by convicting Shenberg of Count 1—RICO conspiracy. Nonetheless, there was little if any evidence tying Shenberg to the charges in Counts 97 and 98. Takiff, the government's agent, was continuously unsuccessful in reinvolving Shenberg in the conspiracy. Roy Gelber's testimony tied Shenberg to these transactions. Once again, the jury clearly rejected Gelber's testimony. Regardless of the defense theory, the jury clearly decided that Shenberg did not commit the acts charged in the *Carrillo* transaction.

Accordingly, the government will be precluded from using evidence of Racketeering Act 4 (Counts 87–88) and Racketeering Act 10 (Counts 97–98) to support the substantive RICO charge in Count 2 of the Superseding Indictment. Racketeering Acts 6 and 7 remain viable as predicate acts supporting the substantive RICO count.

The court granted David Goodhart a Rule 29 Judgment of Acquittal as to Counts 100 and 106. The jury acquitted Goodhart of the money laundering charges in Count 99. As to that money laundering charge, the defense put on substantive evidence regarding the source of the money deposited at Southeast Bank. The jury found that the government's evidence failed to prove beyond reasonable doubt that the deposited funds were part of the "bribe money." Accordingly, the government will be precluded from using the paral-

lel charges in Racketeering Act 13 and portions of Racketeering Act 10 to support the substantive RICO charge in Count 2. Thus, as to defendant Goodhart, portions of Racketeering Acts 10 and 11 may be proven in support of Count 2.

### PARALLEL STATE CHARGES

The preclusion issue is somewhat more difficult for the related state offenses of bribery and unlawful compensation. This portion of the discussion is intended to clarify the court's reasoning, and does not affect the holdings made above. The question, as framed by defendant Sepe, is whether the predicate acts of bribery and unlawful compensation are estopped by Judge Sepe's acquittal of the parallel extortion counts? For the reasons stated below, the court finds that the answer is yes.

■ The government asserts that the elements of a Hobbs Act claim are different from state law bribery claims because bribery has an agreement element that the Hobbs Act does not. Assuming arguendo that this is true, it is irrelevant. Sepe was acquitted of the Hobbs Act charges, not the bribery charges. If the opposite were true the government's argument might be reasonable. However, the acquittal of the Hobbs Act charges, whatever the reason, applies to the state law bribery charges as well since the elements of the Hobbs Act are present in the bribery charge. The *additional* agreement element for bribery is simply irrelevant to the analysis.

Moreover, the Eleventh Circuit has already stated that "FSA § 838.016 has been interpreted as being *substantially identical* to Hobbs Act extortion 'under color of official right.'" *United States v. O'Keefe,* 825 F.2d 314, 320 (11th Cir.1987) (emphasis added).

As noted by defendants, the case of *United States v. Jenkins,* 902 F.2d 459 (6th Cir. 1990), is also instructive. In *Jenkins,* after an acquittal on a Hobbs Act count, the court held that estoppel did not bar state law bribery charges as predicate acts because the Hobbs Act had an *additional* element of "inducement" that the bribery charges did not. *Id.* at 464. The court further noted,

however, that estoppel would apply if inducement was not an element of the Hobbs Act. *Id.* The Supreme Court has since decided that "inducement" is not an element of the Hobbs Act. *United States v. Evans,* —— U.S. ——, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). The decision in *Evans* and the discussion in *Jenkins* support the proposition that the charges are identical and that the Hobbs Act acquittals bar the parallel state offenses listed as predicate acts.

The only element not identical is the interstate commerce requirement of the Hobbs Act. As discussed above, the defendants made substantive arguments to the jury, and did not rely on the "technical" interstate commerce requirement. While the defendants have argued to the court that this element was lacking, the position was *never* articulated to the jury. To make such a holding would be utterly disingenuous. Accordingly, because the state law predicates are "substantially identical" to the Hobbs Act extortion counts, the prosecution is precluded from asserting those as predicate acts.

The government argues that all of the evidence would be admissible nonetheless under Rule 404(b). This assertion, even if true, does not change the fact that the prosecution cannot support its RICO claims with the acquitted counts.

### CONCLUSION

The underlying reasoning of the *Bailin* decision warrants further note. The court stated that:

> the Government should [not] also have the opportunity to hone its presentation on those counts which have already been decided against it. We fear that "the Government with its vastly superior resources, might wear down the defendant, so that 'even though innocent he may be found guilty.'" (citations omitted). Nor should the defendants be forced "to live in a continuous state of anxiety and insecurity" concerning those issues. (citations omitted). Thus, even though the acquitted counts do not bar retrial on the mistried counts, they do bar relitigation of the issues already resolved against the government.

*Bailin,* 977 F.2d at 277–78. Here, as in *Bailin,* the defendants are "not using direct estoppel as a sword to prevent the government from having its one full opportunity to prosecute, but as a shield to prevent the government from having an opportunity to relitigate issues which were already decided in the first trial." *Id.* at 278–79 (footnote omitted).

As *Bailin* teaches, the government should not have the opportunity to relitigate those issues which have already been decided against it. Accordingly, the law will not permit the parties to start over and retry issues already decided.

It is so ordered.

The court has reviewed the motions, the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that the defendants' motions to bar reprosecution as to acquitted counts be **GRANTED as outlined above.** The court **DIRECTS** the parties to file supplemental briefs regarding the RICO pattern and continuity requirements and whether the indictment states a RICO offense as to each remaining defendant.

**DONE AND ORDERED.**