**UNITED STATES of America, Plaintiff–Appellee/Cross–Appellant,**

**v.**

**Robert H. BAILIN, Defendant–Appellant/Cross–Appellee,**

**Michael J. Christ, Thomas A. Crouch, Michael I. Greenfield, James M. Marren, Joseph P. O'Malley, Michael Sidel, Michael D. Smith, Gary Wright, and John M. Baker, Jr., Defendants–Cross–Appellees.**

**Nos. 91–2604, 91–2807.**

United States Court of Appeals, Seventh Circuit.

Argued April 30, 1992.

Decided Oct. 1, 1992.

Mark D. Pollack, James P. Fleissner, Asst. U.S. Attys., argued, Office of U.S. Atty., Criminal Div., Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Edward M. Genson, Marc W. Martin (argued), Genson, Steinback, Gillespie & Martin, Chicago, Ill., for defendant-appellant Robert H. Bailin.

Richard L. Manning, Chicago, Ill., for defendant-appellee Michael J. Christ.

Robert Michael Kalec, Jeremy D. Margolis, Altheimer & Gray, Chicago, Ill., Harris J. Bradley, North Riverside, Ill., for defendant-appellee Thomas A. Crouch.

Allan A. Ackerman, Joelle Hollander, Chicago, Ill., for defendant-appellee Michael I. Greenfield.

Margaret L. Paris, Robert M. Stephenson (argued), Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for defendant-appellee James M. Marren.

David J. Stetler, Lazar Pol Raynal, McDermott, Will & Emery, Chicago, Ill., for defendant-appellee Joseph P. O'Malley.

James R. Meltreger, Anthony J. Onesto, Onesto, Giglio, Meltreger & Associates, Chicago, Ill., for defendant-appellee Michael Sidel.

Matthew F. Kennelly, George J. Cotsirilos, James R. Streicker, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for defendant-appellee Michael D. Smith.

Alan D. Blumenthal, Chicago, Ill., for defendant-appellee Gary Wright.

Jeffrey D. Colman, Thomas P. Sullivan, John J. Dunbar, W. Joseph Thesing, Jr., Robert L. Byman, Jenner & Block, Kevin D. Evans, Joseph J. Duffy, Schiff, Hardin & Waite, Chicago, Ill., for defendant-appellee John M. Baker, Jr.

Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this multi-defendant criminal case, the jury found the defendants not guilty on some counts, but could not reach a verdict on numerous other counts. The district court declared mistrials on the hung counts. The government wishes to retry the defendants on the mistried counts, presenting an issue on appeal which the Supreme Court has never decided. When a defendant is found not guilty of some counts relating to a given transaction, and the prosecution wishes to retry mistried counts that also arise from that transaction, is the prosecution estopped from proving facts that were necessarily decided in the defendant's favor in the initial trial? Put differently, does the doctrine of issue preclusion apply to retrials of mistried counts in criminal cases involving partial verdicts? The district court held that it does, and both the defendant Robert Bailin and the government appeal from aspects of the district court's order. We affirm the district court's order but dismiss one of the government's contentions on cross-appeal.

### Facts

At the time of the events charged in the indictment, the defendants were floor brokers and local traders in the Japanese Yen pit of the Chicago Mercantile Exchange. The government charged the defendants with a variety of violations stemming from their trading practices there. According to the government's brief, "the defendants routinely engaged in a variety of illegal, non-competitive trading practices in order [to] misappropriate the profits and market opportunities of brokers' customers and to minimize brokers' personal liability for order-filling errors." Gov't. Br. at 6. The defendants' acts allegedly violated various sections of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6b, 6c, and 13c(a), the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, as well as the substantive and conspiracy provisions of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d).

Following a six-month trial, the jury considered 195 counts against the 12 defen-

dants who had neither pled guilty nor had their trials severed. The 195 counts included 120 counts of CEA violations, 41 counts of mail fraud, 31 counts of wire fraud, 2 counts of substantive RICO violations, and 1 count of RICO conspiracy. *See* O.R. (91–2604) 408, 778, 828; Tr. 63–11,033, 63–11,-063–66, 64–11,361.[1] After deliberating for an entire month, the jury acquitted the defendants on 115 of the 195 counts, and was unable to reach a verdict on 76. On the other 4 counts, the jury acquitted one named defendant and failed to reach a verdict regarding the other. O.R. (91–2604) 907. The trial court declared a mistrial on the hung counts. *Id.*

The ten defendants who were acquitted on some counts but received mistrials on others are the parties to this appeal and cross-appeal. In the district court, they filed various motions for judgments of acquittal, motions for dismissal, and motions to bar further prosecution. *See* O.R. (91–2604) 920 and 930; O.R. (91–2807) 908, 910, 912–14, 916–18, 925, 938, 940–42, 944, 947, 953, and 958. Based on these motions, the district court issued an order which forms the basis for this appeal. O.R. (91–2604) 988. The order presents two major holdings challenged by the parties, as well as some subsidiary issues:

1. The district court first held that the protection against double jeopardy does not bar retrial of the mistried counts because that protection does not apply to a retrial of mistried counts of an indictment. *Id.* at 5. Robert H. Bailin, the only defendant to bring an appeal, challenges this holding. We affirm.

2. The district court also held that although double jeopardy does not apply on retrial, issue preclusion does. *Id.* at 6. As a result, the government may be barred from proving certain facts which were necessarily decided in the defendants' favor in the first trial. The government challenges this purely legal holding on appeal, and we

affirm. Applying this rule, the district court further held that:

a) on retrial the government cannot prove acquitted counts as predicate acts for RICO substantive counts. *Id.* The government concedes that if issue preclusion applies to this case, this subsidiary ruling was correct. Gov't Br. at 72–73 n. 40. Again, we affirm.

b) as for the non-RICO counts, the defendants had not "pointed to any essential element of a remaining count that is clearly established against the government based on any of the not guilty verdicts." *Id.* Bailin challenges this holding on appeal. Because the defendants never identified any specific issues in the district court, let alone argued that any issues were necessarily established against the government, we affirm this holding as well.

c) finally, during a post-trial hearing, the government requested that the district court clarify its holding. Tr. 80–3. The government challenges what it construes as an oral ruling that modified the written order. We believe that the district court's ambiguous and reluctant comments did not constitute a ruling, so we dismiss this contention.

### Analysis

The Double Jeopardy Clause[2] "affords a defendant three basic protections: [It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984). In addition, the Double Jeopardy Clause contains at least one ancillary protection. Principles of collateral estoppel, also known as "issue preclusion," are "embodied in the Fifth Amendment

---

1. The pleadings in this case have been separated in the appellate record. Citations to O.R. (91–2604) refer to Bailin's appeal; citations to O.R. (91–2807) refer to the government's cross-appeal. We refer to the trial transcript by "Tr. volume number-page number."

2. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution reads "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

guarantee against double jeopardy." *Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970).[3] Collateral estoppel in the criminal context means that "when an issue of ultimate fact has once been determined by a valid and final judgment [i.e., an acquittal], that issue cannot again be litigated between the same parties in any future lawsuit [i.e., a prosecution]." *Id.*

In the present case, none of the defendants has been convicted or punished for any offense, but all of them have been acquitted of some offenses. Therefore, only two of the Double Jeopardy Clause's components are at issue: the protection against a second prosecution for the same offense after acquittal, and issue preclusion.

### I. *Double Jeopardy*

Bailin first argues that the Double Jeopardy Clause prevents further prosecution on the mistried counts because he has already been acquitted on other counts for the conduct which underlies the mistried counts.[4] *Richardson v. United States,* 468 U.S. 317, 323, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984), squarely rejects Bailin's argument. In that case, the jury acquitted the defendant on one count of distributing a controlled substance, but was unable to reach a verdict on another distribution count as well as a conspiracy count. *Id.* at 317, 104 S.Ct. at 3082. After the trial court declared a mistrial on the hung counts, the defendant argued that because he had been acquitted on one count, the Double Jeopardy Clause barred retrial of the mistried counts. *Id.* at 321, 104 S.Ct. at 3084. The Supreme Court rejected this argument. The Court first reiterated that double jeopardy "applies

only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Id.* at 324, 104 S.Ct. at 3086. But "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy," even if there has been an acquittal on another count. As a result, the Double Jeopardy Clause does not apply. *Id.* Thus, the Court held that "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause," even when the defendant secured a partial acquittal in the first trial. *Id.* at 323, 104 S.Ct. at 3085; *United States v. Kimberlin,* 805 F.2d 210, 230 (7th Cir. 1986), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).

Bailin relies on three cases to argue that *Richardson* does not govern this case: *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), and *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). All three of these cases concern successive prosecutions after the defendant had already been *convicted* for one offense. *Brown* holds that a defendant cannot be prosecuted for an offense after he has been convicted for a lesser included offense, 432 U.S. at 166–68, 97 S.Ct. at 2226–27, and, conversely, *Harris* holds that a defendant cannot be prosecuted for an offense after he has been convicted for a greater inclusive offense. 433 U.S. at 682, 97 S.Ct. at 2912. *Grady* expands on those two cases, forbidding a "subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 520, 110 S.Ct. at 2093.

**3.** Before *Ashe,* the Supreme Court had held that collateral estoppel applies in criminal cases, without deciding whether it is a matter of the Double Jeopardy Clause of the Fifth Amendment, the Due Process Clause of the Fifth Amendment, or federal common law. *United States v. Oppenheimer,* 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161 (1916). Although it is possible that issue preclusion in the present case derives from a source other than the Double

Jeopardy Clause, we need not reach that question in this federal prosecution.

**4.** Although all of the parties' contentions are interlocutory, we have appellate jurisdiction over Bailin's double jeopardy claims. *Richardson v. United States,* 468 U.S. 317, 323–24, 104 S.Ct. 3081, 3085–86, 82 L.Ed.2d 242 (1984). We also have jurisdiction over the United States' challenges to the district court's rulings on issue preclusion. 18 U.S.C. § 3731.

These cases do not apply to retrials after mistrials because mistrials do not terminate the original jeopardy. *United States v. Farmer*, 923 F.2d 1557, 1563 (11th Cir. 1991); *see also United States v. McKinney*, 919 F.2d 405, 417 n. 13 (7th Cir.1990) (*Grady* applies only to successive prosecutions).[5] Therefore, we affirm the district court's conclusion that Bailin's double jeopardy protection does not prevent him from being retried.

## II. *Issue Preclusion*

The heart of this appeal is the government's contention that "collateral estoppel" does not protect a defendant when the government retries him or her for mistried counts. Thus, the government contends that the district court erred when it held "although double jeopardy cannot apply to hung counts when there is a partial verdict, collateral estoppel still can." O.R. (91–2604) 988 at 6. In a related argument, the government claims that the district court erred when it held, during a post-trial hearing, that proof of acquitted counts would not be admissible "for any purpose" at the retrial of the mistried counts. Tr. 80–8–9. Conversely, Bailin argues that the district court's holding on collateral estoppel did not go far enough, and that the government is precluded from retrying him on certain counts.

### A. Applicability of Issue Preclusion to Retrials After Partial Acquittals

The government's argument on issue preclusion is a simple syllogism based on two premises. The first premise is that a retrial of mistried counts does not violate the Double Jeopardy Clause because the retrial is a continuation of the original jeopardy. *Richardson*, 468 U.S. at 323, 104

S.Ct. at 3085. The second, that collateral estoppel is "embodied" in the Double Jeopardy Clause. *Ashe*, 397 U.S. at 445–46, 90 S.Ct. at 1195; *Dowling v. United States*, 493 U.S. 342, 346, 110 S.Ct. 668, 671, 107 L.Ed.2d 708 (1990) ("Double Jeopardy Clause incorporates the doctrine of collateral estoppel"); *United States v. Gentile*, 816 F.2d 1157, 1162 (7th Cir.1987). If retrials of mistried counts do not violate the Double Jeopardy Clause, the government reasons, neither can they implicate the derivative doctrine of collateral estoppel.

■ Sometimes simple syllogisms are simply sophistic. That is the case here. The government's argument assumes that because collateral estoppel is "embodied" in the Double Jeopardy Clause, collateral estoppel is co-extensive with the Double Jeopardy Clause's other protections. Thus, the government asks us to hold that collateral estoppel can never apply in circumstances where double jeopardy does not. Such a holding would eliminate collateral estoppel from criminal cases and overrule *Ashe*. A criminal defendant has no need for the benefits of issue preclusion if his entire prosecution is barred by double jeopardy; if double jeopardy bars the entire prosecution, then a court need not consider whether particular issues are precluded from relitigation.[6] Precisely contrary to the government's assertion, collateral estoppel is applicable in criminal cases *only when double jeopardy is not*. The circumstances of *Ashe* illustrate this fact perfectly. The defendant Ashe was accused of robbing six poker players. After Ashe had been acquitted of robbing one of them, the government attempted to prosecute him for robbing one of the other players. Double jeopardy certainly did not bar this successive prosecution, because robbing player

---

**5.** Bailin relies on *United States v. Uselton*, 927 F.2d 905, 908–09 (6th Cir.1991), to argue that *Grady* applies to retrial of hung counts. The *Uselton* court did not hold that *Grady* applies to retrials of mistried counts, however, but merely remanded to the trial court for a determination of *Grady*'s applicability. Moreover, in a subsequent case, the Sixth Circuit recognized that the Double Jeopardy Clause's prohibition against multiple prosecutions is not implicated when the government prosecutes the defendant in a

single proceeding. *United States v. Barrett*, 933 F.2d 355, 360 (6th Cir.1991).

**6.** To be fair, the government recognizes that the logical conclusion of its argument renders collateral estoppel superfluous. Gov't Reply Br. at 12 n. 7. Nevertheless, the government insists on relying on dictum in *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). *See infra* at 278.

number 2 was not the "same offense" as robbing player number 1. *State v. Ashe,* 350 S.W.2d 768, 770 (Mo.1961). But that fact did not prevent the Supreme Court from considering whether collateral estoppel protected the defendant, even though the Court noted that collateral estoppel in criminal cases "is a part of the Fifth Amendment's guarantee against double jeopardy." 397 U.S. at 441–43, 90 S.Ct. at 1193–94. Thus, the Supreme Court held that collateral estoppel applied even though double jeopardy did not.[7] *Id.* at 443, 90 S.Ct. at 1194; *see also Brown v. Ohio,* 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6 ("Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."). The government's syllogism fails.[8]

■ The government's syllogism does have some significance, however, because it demonstrates that this case is not really about "collateral estoppel." When a defendant is retried on hung counts, the retrial does not violate double jeopardy because the defendant is considered to be in "continuing jeopardy," *Jeffers v. United States,* 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977); the original jeopardy never terminated. But the retrial cannot be "collateral" if it is a "continuation" of the first trial. Any issue preclusion in these circumstances, therefore, is not "collateral." Issue preclusion "within the confines of a single claim or cause of action" is known as "direct estoppel." 18 Charles A. Wright et al., *Federal Practice & Proce-*

*dure* § 4418, at 169 (1981). Direct estoppel prevents a party from relitigating a fact which was already determined against it in "a decision that finally disposes of a part of a claim on the merits but does not preclude all further action on the remainder of the claim; issues common to both parts of the claim are precluded, even though new issues remain to be decided." *Id.* at 169–70. Consider, as an example, a civil case for legal and equitable relief, where the claim for damages is tried to a jury, and the claim for equitable relief, to a judge. Any facts necessarily and finally decided by the jury are binding on the judge. *Id.* at 174–75; *see, e.g., Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821, 843–45 (7th Cir.1978) (denoting this form of issue preclusion "collateral estoppel"), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979).

■ The question raised by the government, then, is whether *direct* estoppel should apply in a criminal case. In a retrial of a mistried count in a multicount indictment, does direct estoppel bar the government from relitigating issues that were necessarily and finally decided in the defendant's favor by reason of the jury's partial acquittal on other counts? We hold that it does. Circuit cases recognize issue preclusion in retrials of mistried counts, and the implications of related Supreme Court precedents, as well as the policies which underlie them, support those cases. A number of circuits, including this one, have held that issue preclusion "bar[s] the Government from relitigating a question of fact that was determined in defendant's favor by a partial verdict." *See, e.g., United*

---

7. Another example is illustrative. Even if a defendant has already been prosecuted for a crime, the *double jeopardy prohibition against multiple prosecutions does not prevent the government from prosecuting him for a conspiracy to commit that crime, because a conspiracy and the underlying crime are not the "same offense." United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). Despite the inapplicability of double jeopardy, issue preclusion may nevertheless bar the subsequent prosecution if an acquittal on the substantive crime necessarily established issues which are essential to a finding that the defendant entered into

the alleged agreement. *United States v. Seley,* 957 F.2d 717 (9th Cir.1992).

8. The fact that issue preclusion will apply only in situations where double jeopardy does not suggests a better reading of the Supreme Court's pronouncements that collateral estoppel is a "component" of the Double Jeopardy Clause: issue preclusion in criminal cases, though applicable to the states through the Fifth and Fourteenth Amendments to the United States Constitution, is an additional double jeopardy protection necessary to give full effect to the protection due a defendant after a full or partial acquittal.

*States v. Mespoulede,* 597 F.2d 329, 336 (2d Cir.1979) (when defendant was acquitted of drug possession but jury hung on conspiracy to distribute, "collateral estoppel" prevented government from proving issues necessarily decided in defendant's favor in first trial); [9] *Gentile,* 816 F.2d at 1162; *Kimberlin,* 805 F.2d at 231–32; *United States v. Frazier,* 880 F.2d 878, 883 (6th Cir.1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1142, 107 L.Ed.2d 1046 (1990); *Green v. United States,* 426 F.2d 661 (D.C.Cir. 1970) (per curiam); *Cosgrove v. United States,* 224 F.2d 146 (9th Cir.1954).

▇▇▇ The government argues that these cases have been implicitly overruled by recent Supreme Court decisions which establish the premises of its syllogism. As mentioned above, however, that syllogism does not establish that direct estoppel is inapplicable. Rather, we believe that Supreme Court precedent supports the appellate cases noted above. Whether direct estoppel should apply to retrials of mistried counts comes at the intersection of two independent rules of Supreme Court lineage. The first rule concerns inconsistent jury verdicts in a single proceeding. When a criminal defendant is tried for multiple counts in one proceeding, he or she cannot attack a conviction on one count on the ground that it is inconsistent with the jury's acquittal on another count. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The other rule concerns the effects of acquittals in separate proceedings. When a criminal defendant has been acquitted for an offense in one proceeding, the law "attaches particular significance to an acquittal," so that the acquittal, "however mistaken [it] may have been," bars retrial for the same offense. *United States v. Scott,* 437 U.S. 82, 89, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978). Thus, acquittals bar successive convictions but have no effect on simultaneous ones.

Which rule should apply to a retrial of a mistried count? Is a conviction upon retrial after a partial verdict "simultaneous" or "successive"? We believe that the rule permitting inconsistent jury verdicts in a single proceeding is inapplicable. Inconsistent simultaneous verdicts are permissible because the jury may have "properly reached its conclusion [on the conviction] ... and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion" on the acquitted count. *Powell,* 469 U.S. at 63–64, 105 S.Ct. at 476. Inconsistent verdicts are thus the price of jurors' inexperience, unanimity, and prerogative. This rationale does not apply to a retrial of mistried counts, because a new jury is impanelled for the retrial. "Allowing a second jury to reconsider the very issue upon which the defendant has prevailed serves no valuable function. To the contrary, it implicates concerns about the injustice of exposing a defendant to repeated risks of conviction for the same conduct, and to the ordeal of multiple trials, that lie at the heart of the double jeopardy clause." *Mespoulede,* 597 F.2d at 336–37; *see also Frazier,* 880 F.2d at 882–83. That is precisely why the rule barring successive prosecutions after an acquittal is applicable here. As discussed *supra* at 276 n. 8, issue preclusion is necessary to give the acquitted defendant the full benefit of the protections in the Double Jeopardy Clause. Prosecutors have the discretion to charge a defendant who is accused of a rather limited criminal act with numerous separate crimes. But because the technical elements necessary to establish these different crimes often differ, the defendant who is acquitted on only some counts may receive no formal double jeopardy protection. Such a defendant could be subject to numerous retrials simply because of the multiplicity of technically distinct (though factually overlapping) counts. Although we do not question that outcome, we do not believe that the Government should also have the opportunity to hone its presentation on those issues which have already

---

9. We note that *Mespoulede,* insofar as it held that issue preclusion applies to evidentiary as well as ultimate facts, has been partially over-

ruled by *Dowling,* 493 U.S. at 348–49, 110 S.Ct. at 672–73.

been decided against it. We fear that "the Government, with its vastly superior resources, might wear down the defendant, so that 'even though innocent he may be found guilty.'" *Scott*, 437 U.S. at 89, 98 S.Ct. at 2193 (quoting *Green v. United States*, 355 U.S. 184, 186–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957)). Nor should the defendants be forced "to live in a continuous state of anxiety and insecurity" concerning those issues. *Green*, at 186, 78 S.Ct. at 223.[10] Thus, even though the acquitted counts do not bar retrial on the mistried counts, they do bar relitigation of issues already resolved against the government.

Against the weight of binding appellate precedent and informative Supreme Court precedent, the government relies on dictum in *Ohio v. Johnson*, 467 U.S. at 500 n. 9, 104 S.Ct. at 2541 n. 9. In that case, the Court stated in a footnote, "where the State has made no effort to prosecute the charges seriatim, the considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable." The government's argument turns on this sentence. But *Johnson* involved a very different question from that now before us. In *Johnson*, the defendant was charged with four crimes. He offered to plead guilty to the two lesser offenses, and to plead not guilty to the two greater ones. The trial court accepted the guilty pleas *over the State's objection*. The trial court then held that under the Double Jeopardy Clause, the defendant's guilty pleas on the lesser offenses barred further prosecution on the more serious ones. *Id.* at 493–94, 104 S.Ct. at 2538. The Supreme Court reversed, holding that the defendant

"should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Id.* at 501–02, 104 S.Ct. at 2542. The Court also held that principles of collateral estoppel were inapplicable because the state did not prosecute the charges "seriatim." *Id.* at 500 n. 9, 104 S.Ct. at 2541 n. 9. Indeed, Johnson's guilty plea did not really decide any factual issues, because "the taking of a guilty plea is not the same as an adjudication on the merits after full trial, such as took place in *Ashe v. Swenson.*" *Id.* Far from supporting the government's argument, *Johnson* is almost precisely opposite the present case. The *Johnson* Court emphasized that:

> [n]o interest of respondent ... protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment.... Respondent has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshall its evidence and resources more than once or to hone its presentation of its case through trial.... There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws.

*Id.* at 501–02, 104 S.Ct. at 2542.[11] In contrast, Bailin is not using direct estoppel as a sword to prevent the government from having its one full opportunity to prosecute, but as a shield to prevent the government from having an opportunity to relitigate issues which were already decided in

---

10. In the present case, for example, the jury considered 195 counts of criminal charges against the defendants. But these counts were largely duplicative because many of the allegedly illegal securities transactions gave rise to numerous counts of mail fraud, wire fraud, and CEA violations. Moreover, all of these counts arose from only one criminal scheme. Although the Government did not secure a single conviction from the jury in the first trial, the numerous mistried counts have caused the defendants to remain in jeopardy three years after the initial indictment was docketed.

11. The *Johnson* Court also noted that trial proceedings are not "capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment raises immediately a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded." *Id.* at 501–02, 104 S.Ct. at 2542. Applying direct estoppel to retrials of mistried counts does not require trial proceedings to be "infinitely subdivided," because the retrial is, in at least a partial sense, a separate proceeding.

the first trial.[12] Thus, the government's reliance on the dictum in *Ohio v. Johnson* is unavailing.

There is a final reason for applying the *Scott* rule that acquittals bar future prosecutions rather than the *Dunn/Powell* rule that acquittals do not invalidate simultaneous convictions. When a jury returns a simultaneous acquittal and conviction, a defendant cannot benefit from issue preclusion because inconsistent verdicts prevent a court from determining that any issue was necessarily decided against the government. *Hoffer v. Morrow*, 797 F.2d 348, 352 (7th Cir.1986); *United States v. Price*, 750 F.2d 363, 365 (5th Cir.), *cert. denied*, 473

U.S. 904, 105 S.Ct. 3526, 87 L.Ed.2d 651 (1985). The government cannot prevail with the analogous argument that an acquittal on one count, coupled with a hung jury on a related count, makes it impossible to determine that the jury necessarily established any common element of those two offenses against the government.[13] A hung jury is defined as a jury "so irreconcilably divided in opinion that they cannot agree upon any verdict by the required unanimity," *Black's Law Dictionary* 741 (6th ed. 1990), or as "one that did not carry out the task assigned it." Anne B. Poulin, *Collateral Estoppel in Criminal Cases*, 58

**12.** For the same reasons, *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), does not help the government. In *Standefer*, the Supreme Court held that a criminal defendant could not benefit from non-mutual offensive collateral estoppel; the defendant wanted to bar the government for prosecuting him as an accomplice when the alleged principal to the crime had already been acquitted. The Court held that non-mutual offensive collateral estoppel was unavailable under those circumstances because the government had not had a "full and fair opportunity to litigate" in the proceeding against the alleged principal. *Id.* at 22–23, 100 S.Ct. at 2007. In coming to this conclusion, the Court noted that in a criminal case, the prosecution's ability to present evidence is severely (and one-sidedly) limited. For example, in the trial of the principal, certain evidence might have been barred by the exclusionary rule or by the defendant's Fifth Amendment privilege against self-incrimination. But these evidentiary exclusions would not apply at the trial of the alleged accomplice because he would not have standing to argue violations of the alleged principal's constitutional rights. *Id.* at 24, 100 S.Ct. at 2008. In a retrial of mistried counts, as in the present case, this consideration does not apply; any evidentiary exclusions applicable in the first trial will apply in the retrial as well. As a result, there is no reason to let another jury consider the same issues. The *Standefer* Court also noted that in a criminal case, the prosecution cannot obtain a directed verdict, a judgment notwithstanding the verdict, or a reversal of an acquittal on appeal, no matter how compelling its evidence or how arbitrary the jury's acquittal. This factor also militated against the availability of non-mutual offensive collateral estoppel, because the alleged principal's inexplicable acquittal should not prevent the prosecution from trying again against a separate defendant. *Id.* at 22–23, 100 S.Ct. at 2007. But in a retrial, the government's inability to secure a conviction from the district judge or an appellate court militates *toward* recognizing issue preclusion. Because the government

cannot overturn the jury's acquittals, they are final adjudications that should have preclusive effect. At bottom, *Standefer* boils down to a simple result: as in *Ohio v. Johnson*, the defendant should not be allowed to use issue preclusion as a sword to prevent the State from undertaking one full prosecution for the given offense. *See also Jeffers*, 432 U.S. at 152–53, 97 S.Ct. at 2217–18 (plurality) (when defendant was convicted in two separate trials for "same offense," double jeopardy did not invalidate second conviction because defendant expressly requested separate trials).

**13.** Consider a defendant who is tried for two crimes. Crime 1 has two elements, A and B, and Crime 2 has two elements, A and C. Thus, the crimes have element A in common. The jury acquits the defendant of Crime 1 but is hung on Crime 2. Before retrial, the defendant argues that based on the evidence presented at trial, the acquittal on Crime 1 indicates that the jury necessarily resolved element A against the government, barring retrial on Crime 2 (which also included element A). In such a case, the government could argue that because the jury was hung on Crime 2, the jury could *not* have found element A against the government, because if the jury *had* then it would have acquitted on *both* crimes. Put differently, there are only two possible explanations for the mixed acquitted and hung counts, and neither explanation, the government could argue, gives rise to issue preclusion. The first possibility is that the different verdicts were consistent, that the jury acquitted the defendant of Crime 1 because the prosecution failed to prove the non-common element B. Because element B is not an element of Crime 2, there is no issue preclusion. The second possibility is that the different verdicts are *in*consistent, that the jury acquitted the defendant of Crime 1 because the prosecution failed to prove element A, but the jury did not acquit on Crime 2 because of some jury mistake.

Cinn.L.Rev. 1, 44 n. 12 (1989). Therefore, the "jury's failure to reach a verdict [is] too inconclusive to qualify as inconsistent" for the purposes of issue preclusion. *Id.* The powerful double jeopardy protections that attach to acquitted counts should not be outweighed by the inconclusiveness inherent in hung counts.[14] *United States v. Seley,* 957 F.2d 717, 723 (9th Cir.1992). If the Supreme Court would resolve this close and difficult question differently, we believe that a statement clearer than the dictum in *Ohio v. Johnson* is necessary. Therefore, we affirm the district court's holding.

### B. The District Court's Subsidiary Holdings on Issue Preclusion

 Three rules govern the application of issue preclusion to criminal cases.[15] First, in *Ashe,* the Supreme Court held that:

the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'

397 U.S. at 443, 90 S.Ct. at 1194 (quoting *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948)). Second, the Supreme Court refined *Ashe* in *Dowling.* In *Dowling,* the government wanted to prove the defendant's identity by introducing evidence that the defendant had committed a certain crime, even though the defendant had already been acquitted for that crime in a separate action. The Court held that introducing evidence of the defendant's identity did not offend the defendant's right to issue preclusion because the question whether the defendant had committed the other crime was not an "*ultimate issue* in the [subsequent] prosecution." 493 U.S. at 348–51, 110 S.Ct. at 672–74 (emphasis added). To introduce evidence regarding the other crime, the government did not have to prove the defendant's identity in that crime beyond a reasonable doubt. Under Fed.R.Evid. 404(b), the evidence was admissible "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." At 348, 110 S.Ct. at 672 (quoting *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988)). As a result, the Court held that even though there might have been insufficient evidence to convict Dowling of the other crime beyond a reasonable doubt, there could be sufficient evidence to permit the jury to consider it in determining Dowling's identity. *Dowling* thus establishes that issue preclusion in criminal cases only applies when the relevant issue is "ultimate" in the subsequent prosecution, i.e., when the issue must be proven beyond a reasonable doubt. *See* Note, *Collateral Estoppel Effect of Prior Acquittals,* 46 Brooklyn L.Rev. 781 (1980) (anticipating *Dowling*). The third procedural rule involves the burden of proof. The defendant bears the burden of establishing that the issue was necessarily resolved by the prior jury. *Dowling,* 493 U.S. at 350, 110 S.Ct. at 673; *Gentile,* 816 F.2d at 1162. Combining these three procedural rules, the defendants have the burden of proving, based on the indictment, evidence, instructions, and

---

**14.** Moreover, hung juries, including even multiple hung juries, do not have any significance that might benefit the defendant; a defendant has no right to argue that because the jury was deadlocked, the prosecution's evidence must have been insufficient. *Richardson,* 468 U.S. at 321–24, 104 S.Ct. at 3084–86; *see also Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992) (two hung juries do not mean that defendant in civil case should have received directed verdict). If hung juries do not represent any conclusive determination in favor of the defendant, we do not believe that they should represent a conclusive determination in favor of the government.

**15.** Although these rules were developed in cases involving collateral estoppel, we see no reason why they should not govern direct estoppel as well.

verdict, that the jury's acquittals necessarily determined issues which, on retrial, must be proven beyond a reasonable doubt. We review the district court's conclusion on this legal issue *de novo. Gentile,* 816 F.2d at 1161.

### 1. *Issue Preclusion on the Non–RICO Counts*

■ Bailin argues that the government is precluded from retrying him on Counts 104, 115, 117, 239, 240, 276, 277, and 284 of the indictment, because the jury's acquittals on other counts necessarily preclude the government from proving guilt on these counts. In deciding this issue below, the district court held that the "defendants do not point to any essential element of a remaining count that is clearly established against the government based on any of the not guilty verdicts." O.R. (91–2604) 988 at 6. This holding is correct. In the district court, Bailin and the other defendants [16] barely argued issue preclusion at all. In his *Motion to Preclude Retrial on Counts 104, 115, 117, 239, 240, 277, 276 and 284,* O.R. (91–2604) 930 at 3, Bailin relied on the Double Jeopardy Clause as construed in *Grady v. Corbin,* and simply mentioned "other double jeopardy principles." Bailin's *most* specific argument was:

> Under the government's charging theory and due to the elements of the pertinent offenses, the cheat and defraud charge set forth in Count 104 constitutes a lesser offense of the mail fraud charge in Count 105. As the jury found Bailin not

guilty of the mail fraud charge, he cannot be retried for the subsumed cheating and defrauding offense.

*Id.* at 4.

Focusing on greater and lesser offenses is a double jeopardy argument, not an issue preclusion argument. As discussed above, Bailin needed to 1) identify specific issues that were relevant to the acquittals, 2) prove that those issues were necessarily decided by the acquittals, through reliance on "the pleadings, evidence, charge, and other relevant matter," *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194, and 3) prove that those issues will be "ultimate" in the retrial. Bailin did not get to square one; he did not identify any specific issues. Even on appeal, Bailin's arguments are only slightly more specific. For example, Bailin argues that "reprosecution of Count 104 is barred because the jury conclusively resolved that Bailin did not aid and abet a cheat and defraud offense by finding him not guilty of mail fraud (Count 105) which of course has 'intent to defraud' as an essential element." Bailin Br. at 30. Then, in a footnote, Bailin argues that he "did not contest the mailings; therefore, it cannot be said that the jury found Bailin not guilty because the mailings did not occur." *Id.* at 30 n. 14. It is debatable whether this argument would have been sufficiently specific had Bailin made it to the district court. But he did not. Moreover, even if Bailin had made this argument to the district court, it would not have been availing. Although Bailin did not "contest the mailings," other defendants did,[17] and Bailin

---

**16.** Each of the defendants is entitled to the benefit, if any, of arguments made by other defendants. O.R. (91–2604) 988 at 2. Only two of the other defendants' post-trial motions explicitly mentioned issue preclusion, however. In Defendant Smith's Motion for Acquittal, O.R. (91–2807) 910, Smith argued that because an acquittal on one count established that the jury had disbelieved certain testimony, that evidence could not be presented on retrial. *Id.* at 2. And in Defendant Marren's Motion for Acquittal, O.R. (91–2807) 912 at 3, Marren argued that "the doctrine of collateral estoppel would preclude any evidence on this [acquitted] fraud charge under the RICO conspiracy charge." Neither of these arguments satisfies the defendants' burden, and both fail under *Dowling* as well. Finally, defendant Sidel did not argue issue pre-

clusion, but merely moved to bar further prosecution under *Grady v. Corbin.* O.R. (91–2807) 953.

**17.** In closing, Baker's attorney argued that "if such a scheme existed, ladies and gentlemen, it existed on this trading floor. And I would submit to you these mailings or wirings had nothing to do in terms of carrying out or furthering any scheme." Tr. 72–12,370. Similarly, Smith's attorney argued that "these [mailed] confirmations could have in no way furthered any scheme to defraud ... because those confirmations correctly reported to these customers where their orders were filled, they correctly tell them the quantity, they correctly tell them the price, and they say nothing about what bracket they were filled in." Tr. 76–12,900.

does not establish that the jury necessarily acquitted him of mail fraud for other reasons. At oral argument, Bailin contended that it was not necessary for the defendants to argue issue preclusion with great specificity before the district court because the district court was familiar with the evidence presented at trial. We strongly disagree with this contention. When a case involves a general verdict, establishing that the verdict necessarily determined any particular issue is extremely difficult. *Ashe,* at 443, 90 S.Ct. at 1194; *Johnson v. Estelle,* 506 F.2d 347, 352 (5th Cir.), *cert. denied,* 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975). As a result, the district court's familiarity with the proceedings did not render the defendants' burden any lighter below than it is here. Accordingly, we affirm the district court's finding that the defendants did not establish that the acquittals necessarily decided any issue against the government.[18]

In its cross-appeal, the government argues that, even if issue preclusion does apply on retrial, the district court construed issue preclusion much too broadly. More specifically, the government argues that the district court erroneously precluded it from introducing evidence that relates to counts for which the defendants were already acquitted "for any purpose" at the retrial. The government asserts that it may introduce evidence relevant to the acquitted counts for numerous issues that are not "ultimate" in the retrial. The district court made no contrary holding in its written opinion. Precisely opposite the government's contention, the court held

that "collateral estoppel will *only* be applied to preclude proof of any acquitted counts as RICO predicate acts on retrial." O.R. (91–2604) 988 at 6 (emphasis added). During a post-trial conference, however, the government asked the district court to clarify its ruling. The district court expressly stated that it would do so only after receiving written briefs from the parties. Tr. 80–4. Despite this ruling, the government insisted on pressing the issue later in the conference. The judge finally made some comments which the government interprets as a ruling on this issue; the major comment was that the district court "could not think of any" purpose for which the acquitted counts could be proven. *Id.* at 8–9. We believe that the district court's comment was ambiguous and not intended to be final,[19] and that the government's interpretation of it directly contradicts the written opinion. Moreover, based on the written opinion, we have no reason to believe that the district court is unfamiliar with *Dowling.* As a result, we believe that the government is attempting to create an issue out of thin air. We will construe the district court's written order only.

### 2. *Issue Preclusion on the RICO Counts*

■ The government also challenges the district court's holding that the government is estopped from proving acquitted offenses as predicate acts for substantive RICO violations. This argument rests on the government's contention that issue preclusion does not apply to a retrial of mis-

---

18. In some circumstances, violations of the Double Jeopardy Clause are considered plain error. *United States v. Podell,* 869 F.2d 328, 332 (7th Cir.1989). It is possible, therefore, that the defendants should have the opportunity to reformulate their issue preclusion argument in the district court. We express no opinion on this question.

19. THE PROSECUTOR: Perhaps we are not construing your order correctly, but the few sentences on Page 6 seem to indicate that the Court views collateral estoppel as a bar to preclude use of the acquitted counts as RICO predicates in further prosecution, so we read that as to be a limit on our use of the evidence on the acquitted counts.

THE COURT: I am not quite sure I understand—you are saying to me you want to prove up acquitted counts?

THE PROSECUTOR: That is right. That was the position, your honor, we took very clearly in our response to the various defendants.

THE COURT: I think I am against you on that.

THE PROSECUTOR: Okay. We wanted to make sure we understood that.

THE COURT: I think on acquitted counts they don't come in.

THE PROSECUTOR: For any purpose?

THE COURT: I can't think of any.

*Id.* at 8–9.

tried counts, a contention that we have already rejected. If issue preclusion does apply, however, the government concedes that *"Dowling* would not allow evidence relating to acquitted mail or wire counts to be used to establish proof of the specific corresponding racketeering act charged in the substantive racketeering counts." Gov't Br. at 72–73 n. 40.[20] Because we have already held that issue preclusion will apply on retrial, we affirm the district court on this holding as well.

### Conclusion

In conclusion, we 1) affirm the district court's refusal to rule that retrial of any counts would violate double jeopardy; 2) affirm the district court's holding that issue preclusion applies to a retrial of mistried counts; 3) dismiss the government's contention that the district court erroneously precluded the government from using certain evidence "for any purpose" on retrial; and 4) affirm the district court's ruling that the government may not prove acquitted counts as predicate acts for substantive RICO violations.

---

**20.** The district court also held that although the defendants had been acquitted of numerous counts, "there was sufficient evidence of both a pattern of racketeering and a conspiracy." O.R. (91–2604) 988 at 6–7. Therefore, the court held that the government is not precluded from retrying the RICO conspiracy charges. *See United States v. Felix,* — U.S. —, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) (even if defendant has already been prosecuted for crime, double jeopardy prohibition against multiple prosecutions does not bar prosecution for conspiracy to commit that crime because conspiracy and underlying crime are not "same offense"); *United States v. Neapolitan,* 791 F.2d 489, 501 (7th Cir.) (when indictment defines RICO conspiracy with refer-

ence to particular predicate acts, "crimes … that do not appear in the indictment cannot serve as predicate acts" but "would be admissible as circumstantial evidence that Neapolitan was a member of a conspiracy"), *cert. denied,* 479 U.S. 939, 940, 107 S.Ct. 421, 422, 93 L.Ed.2d 371, 372 (1986); *see also United States v. Glecier,* 923 F.2d 496, 500–01 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). Although the defendants argue that some of the acquittals bar retrial of RICO conspiracy counts, *see supra* at 276 n. 7, they did not raise this issue in their appeal, but discuss it instead as appellees. We lack jurisdiction over claims of error raised by appellees.